# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–92

| | | |
|---|---|---|
| ARNESHIA L. RYAN | | **OPINION DELIVERED** SEPTEMBER 23, 2015 |
| | APPELLANT | APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT [NO. DR–2012–83–5] |
| V. | | HONORABLE KATHLEEN BELL, JUDGE |
| BRITNEY Q. WHITE | APPELLEE | AFFIRMED |

### ROBERT J. GLADWIN, Chief Judge

Appellant Arneshia Ryan appeals the July 28, 2014 order entered by the St. Francis County Circuit Court that awarded joint custody of the parties' minor child to appellant and appellee, Britney White, the father of the child. Appellant argues that the circuit court erred in giving a preference to joint custody in this case and in finding that appellee met his burden required by Arkansas Code Annotated section 9-10-113 (Repl. 2009) for an award of custody. We affirm.

The parties are parents to a son, J.W., born out of wedlock on June 26, 2012. The parties dated for nine years and lived together in appellee's home for the last four years of their relationship. During that time, appellant became pregnant with J.W. When she was five months pregnant, she moved out of appellee's house based on suspicions that appellee had been unfaithful. Appellant then cancelled her phone service and moved again without informing appellee of her new contact information. Appellee repeatedly, but unsuccessfully,

sought to contact appellant after she had moved out. When appellee realized that appellant was not going to allow him to be involved for the remainder of the pregnancy, he filed a complaint to establish paternity, to request that he be allowed to be present at his son's birth, and to establish joint custody of the child upon his birth. Appellant responded to appellee's complaint, admitting paternity and requesting full custody of the baby. Because appellant did not inform appellee about the impending birth, appellee, of his own initiative, made multiple trips to the hospital around the due date to try to see his newborn son. On his fifth trip, someone at the hospital told appellee that he had arrived two days too late.

Appellant refused to allow appellee to see J.W. until September 3, 2012, ten weeks after the child had been born. Appellee and appellant then arranged occasional visits among appellant, appellee, and J.W. during the fall of 2012. Those visits continued until February 2013, when appellant received notice that a "temporary hearing" on appellee's complaint had been scheduled for May 2013. From February until May 2013, appellant did not permit appellee to see J.W. On June 11, 2013, the circuit court filed an order, signed by counsel for both parties which, in accordance with the May 21, 2013 hearing, established appellee's paternity and granted appellant temporary physical custody "subject to the right of reasonable visitation." Appellee was given a phased-in visitation schedule progressing to standard (Schedule A) visitation.

Appellant deprived appellee of his first scheduled visitation in June 2013 and on two subsequent occasions in December 2013, including Christmas. Thereafter, appellee filed a petition for contempt. At the January 16, 2014 hearing scheduled for a final custody

determination, Judge Hudson recused but noted that her prior orders remained in effect and were to be followed. The very next day, however, appellant denied appellee's scheduled visitation and refused to allow contact between J.W. and him. Appellee filed a second verified petition for contempt on January 23, 2014, noting that appellant had denied him scheduled weekend visitations in January 2014 without explanation. An order to appear and show cause was issued on January 29, 2014, setting February 26, 2014, as the hearing date on appellee's petitions for contempt. On November 20, 2014, a nunc pro tunc order reverting to the February 26, 2014 hearing was entered, finding appellant in "willful contempt" of the circuit court's visitation orders, changing the child's last name to appellee's, and reserving the issue of sanctions until the final custody hearing on March 10, 2014.

At the March 10, 2014 hearing, appellant acknowledged her history of unilaterally cutting off appellee's visitation. She testified that she has no concerns with the physical attributes of appellee's home, other than a stray shovel that might be lying in the back yard, and she agreed that appellee is a good father who is very concerned about J.W. and has been involved to the extent that he has been allowed. Appellant testified that she knew of no reason why appellee could not adequately care for J.W. in his home. She further acknowledged that a father's relationship with a child is as important as the mother's and that a father should be permitted to spend as much time with his child as possible. Appellant's only disagreement with appellee's request for joint custody was that she felt it would confuse J.W., being almost two years old, but she did express a desire to "co-parent" with appellee.

Appellee expressed multiple concerns with appellant having primary custody of J.W., including her fluctuating work schedule, her mother keeping a loaded gun in the apartment and having fired it with J.W. present, her cutting appellee off from contact with J.W. when she became angry, and her fictitious report of child abuse made when she was angry because appellee had J.W.'s hair cut. Appellee acknowledged his continued willingness to work with appellant to care for J.W., and he stated that between February 20, 2014, and the March 10, 2014 hearing, the parties had been able to work together. Appellee requested a seven-day schedule where both parents would have equal time with J.W. to eliminate appellant's bargaining ability or "holding him hostage over my head and blackmailing me with my son."

After hearing the testimony of appellee, appellant, appellee's mother, the DHS investigator, and appellant's character witness, the circuit court noted that appellee had sustained his statutory burden to be awarded custody and that both parties are "suitable people to have custody of this child." The circuit court acknowledged that as of that date, both parties had presented testimony regarding their willingness to work together and confirmed that they had successfully done so in the weeks leading to the hearing.

In its order entered July 25, 2014, the circuit court found that both parties were capable of providing nurture and support to J.W. and that both were appropriate for placement. The circuit court found that appellee had established paternity and sustained his burden of providing financial and emotional support to J.W. in order to sustain a custody request. The circuit court noted that it was cognizant of the fact that the Arkansas Legislature has directed that joint custody is favored, as stated in Arkansas Code Annotated section

SLIP OPINION

9-13-101(a)(1)(A)(iii) (Supp. 2013), and awarded joint custody with a seven-day rotation. Additionally, the circuit court awarded appellee $500 as a sanction against appellant for contempt. Appellant filed her timely notice of appeal on August 8, 2014.

The primary consideration in child-custody and visitation cases is the welfare and best interest of the child involved. All other considerations are secondary. *Donato v. Walker*, 2010 Ark. App. 566, 377 S.W.3d 437. On appeal, this court reviews the evidence de novo, but we will not reverse unless the findings are clearly erroneous. *Black v. Black*, 2015 Ark. App. 153, 456 S.W.3d 773. This necessarily turns, in large part, upon credibility determinations, and we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving children. *Id.* We do not reverse unless there is clear error, meaning that after conducting a de novo review we are left with a definite and firm conviction that a mistake was made. *Id.*; *see also Fox v. Fox*, 2015 Ark. App. 367, ___ S.W.3d ___.

Also, this court reviews issues of statutory interpretation de novo. *Steele v. Lyon*, 2015 Ark. App. 251, 460 S.W.3d 827. In reviewing issues of statutory interpretation, a court will determine the meaning and effect of a statute first by construing the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the statute's language is clear and unambiguous, there is no need to look further and apply the rules of statutory construction. *Id.*

Several statutes are relevant to the current appeal. Specifically, Arkansas Code Annotated section 9-10-113 sets forth the law regarding custody of a child born out of wedlock:

> (a) When a child is born to an unmarried woman, legal custody of that child shall be in the woman giving birth to the child until the child reaches the age of eighteen (18) years unless a court of competent jurisdiction enters an order placing the child in the custody of another party.
>
> (b) A biological father, provided he has established paternity in a court of competent jurisdiction, may petition the circuit court in the county where the child resides for custody of the child.
>
> (c) The court may award custody to the biological father upon a showing that:
> (1) He is a fit parent to raise the child;
> (2) He has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and
> (3) It is in the best interest of the child to award custody to the biological father.

Additionally, Arkansas Code Annotated section 9-10-109 (Repl. 2009) addresses the establishment of paternity:

> (a)(1)(A) Subsequent to the execution of an acknowledgment of paternity by the father and mother of a child pursuant to § 20–18–408 or § 20–18–409, or a similar acknowledgment executed during the child's minority, or subsequent to a finding by the court that the putative father in a paternity action is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the circuit court as if it were a case involving a child born of a marriage in awarding custody, visitation, setting amounts of support, costs, and attorney's fees, and directing payments through the clerk of the court, or through the Arkansas child support clearinghouse if the case was brought pursuant to Title IV-D of the Social Security Act.

Finally, Arkansas Code Annotated section 9-13-101 (Supp. 2013) provides, in relevant part,

> (a)(1)(A)(i) In an action for divorce, the award of custody of a child of the marriage shall be made without regard to the sex of a parent but solely in accordance with the welfare and best interest of the child.

(ii) In determining the best interest of the child, the court may consider the preferences of the child if the child is of a sufficient age and mental capacity to reason, regardless of chronological age.

(iii) *In an action for divorce, an award of joint custody is favored in Arkansas.*

. . . .

(5) As used in this section, "joint custody" means the approximate and reasonable equal division of time with the child by both parents individually as agreed to by the parents or as ordered by the court.

. . . .

(b)(1)(A)(i) *When in the best interest of a child, custody shall be awarded in such a way so as to assure the frequent and continuing contact of the child with both parents consistent with subdivision (a)(1)(A) of this section.*

(ii) *To this effect, the circuit court may consider awarding joint custody of a child to the parents in making an order for custody.*

(Emphasis added.)

## I. *Did the Circuit Court Err in Giving Preference to Joint Custody?*

Act 1156 of 2013 enacted Senate Bill 901 of the Arkansas General Assembly, which is codified at Arkansas Code Annotated sections 9-13-101 to -110. The specific statutory language of this change now reads, "*In an action for divorce*, an award of joint custody is favored in Arkansas." Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (emphasis added). In this case, the child in question was born out of wedlock, and appellant argues that this statutory section should not have applied because it clearly states that it is applicable to divorce actions. She maintains that the circumstances of children born to a marriage are markedly different because they ordinarily have lived in the same household with both parents for a period of time. Both parents have legal custody of children born during a marriage until a court order severs this relationship.

In this case, J.W. has never lived with both parents, and paternity was not established until he was almost a year old, which was also the first time that frequent visits began with

7

appellee. Before then, J.W. had lived exclusively with appellant, and she had legal custody of him pursuant to section 9-10-113(a).

We hold that, although the circuit court did not err in acknowledging the "favored" status of joint custody under section 9-13-101, it does not directly apply to these facts. We acknowledge that the "*favored*" status of joint custody specifically applies in divorce cases rather than custody cases involving children born to unmarried parents but note that section 9-10-109 expressly provides that, once paternity has been established, the court is ordered to follow "*the same guidelines, procedures, and requirements … as if it were a case involving a child born of a marriage in awarding custody [and] visitation . . . .*" Ark. Code Ann. § 9-10-109 (emphasis added). Our supreme court noted in *Norwood v. Robinson*, 315 Ark. 255, 866 S.W.2d 398 (1993), that "[f]athers of illegitimate children should certainly bear the same burden as fathers of legitimate children born of marriage." *Norwood*, 315 Ark. at 259, 866 S.W.2d at 401. Once paternity is established, the presumption of awarding custody to the mother is erased, and the biological father is afforded the same right to establish a parental and custodial relationship with the child to which a married parent is entitled. Ark. Code Ann. § 9-10-109; *Norwood*, *supra*. Accordingly, the circuit court did not err in recognizing that joint custody is "favored" under section 9-13-101. Section 9-13-101, goes on to recognize that,

> (b)(1)(A)(i) When in the best interest of a child, custody shall be awarded in such a way so as to assure the frequent and continuing contact of the child with both parents consistent with subdivision (a)(1)(A) of this section.
> (ii) To this effect, the circuit court may consider awarding joint custody of a child to the parents in making an order for custody.

Ark. Code Ann. § 9-13-101(b)(1)(A)(i)–(ii).

   II.  *Did Appellee Meet His Burden Under § 9-10-113 for an Award of Custody?*

Section 9-10-113 gives a father of a child born out of wedlock the right to seek custody after establishing paternity. Custody may be granted to him if the court finds that (1) he is a fit parent to raise the child; (2) he has assumed the responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and (3) it is in the best interest of the child to award custody to the biological father.

Initially, appellant notes that in *Norwood, supra,* the circuit court deemed the initial determination of paternity as the last custody order and required a material change in circumstances in addition to the three conditions previously listed. The analysis was that custody vested with the mother at birth and was implicitly affirmed in the paternity order granting the father visitation. Appellant reiterates that whenever a party is requesting a change of custody, it is then that party's burden to show that there has been a change of circumstances since the original order establishing custody or that there were facts not presented at the initial hearing that would bear on the best interest of the child. *See Metz v. Steele,* 2012 Ark. App. 373, 418 S.W.3d 411. In this case, a full hearing was conducted and two orders were entered on June 11, 2013.[1] Appellant claims that these two orders, regardless of whether they were temporary, established paternity and awarded visitation to the father.

---

[1]Two orders containing slightly different language, but addressing the same issues, were filed that date. One of those orders does not include the word "temporary" in the third paragraph; however, it is undisputed that the order scheduling the May 2013 hearing, which was personally served on appellant on May 6, 2013, expressly provided that a "temporary hearing" was scheduled.

She cites *Hodge v. Hodge*, 97 Ark. App. 217, 245 S.W.3d 695 (2006), in which this court held that it was error if a material-change-of- circumstances standard was not used after an initial award in favor of the mother.

Other than the requirements set out in section 9-10-113, there are no additional requirements that a biological father must establish upon an initial custody determination. *See Donato*, *supra*; *Harmon v. Wells*, 98 Ark. App. 355, 255 S.W.3d 501 (2007); *Sheppard v. Speir*, 85 Ark. App. 481, 157 S.W.3d 583 (2004). We hold that appellee was not required to establish a material change in circumstances in this case. Appellee filed a complaint to establish paternity and to obtain joint custody on April 4, 2012, more than two months before J.W. was born. A temporary hearing was held on May 21, 2013, and appellee's paternity was established in the June 11, 2013 order. That order also established temporary custody in appellant and granted appellee a phased-in visitation schedule working toward standard Schedule A visitation.

The June 11, 2013 order set temporary custody rather than vesting final, primary custody in appellant. It was temporary in nature, reserving the determination of custody for a future date. Judge Hudson, the presiding judge at the time the orders were entered, spoke with Judge Bell, the current judge, on the record at the March 10, 2014 hearing and stated, "We never had a hearing on permanent custody." The only June 11, 2013 order contained in the record (which Judge Bell declared was controlling) provides that "temporary care and custody" was granted. Upon reviewing both orders, Judge Bell noted,

> Both of them in paragraph three and later on in the order state that the order is the result of a temporary hearing. So it can only be temporary custody when you were

at a temporary hearing. And there does not seem to be anything on the face of this order [that] changes it from a temporary hearing to a final.

The law does not prohibit a circuit court from entering a temporary order of visitation in favor of the father at the same time that he is found to be the father and reserving the issue of custody for a later time. *Harmon*, *supra*. The evidence established, and the circuit court correctly determined, that the June 11 order was temporary in nature, with the final issue of custody being reserved for a later date, as evidenced by the September 20, 2013 order setting a final hearing to determine the issues of "Custody, Visitation and Child Support."

Because appellee filed his petition for custody before paternity was established and because the subsequent June 11, 2013 order was temporary in nature, appellee only had to meet the three requirements set forth in section 9-10-113 in order to be awarded custody of J.W. in March 2014. No proof of a material change of circumstances was necessary. *See Donato*, *supra*; *Harmon*, *supra*; and *Sheppard*, *supra*.

Specifically, in regard to appellee's failure to meet his burden of proof, appellant argues that appellee did not demonstrate that he had assumed his responsibilities toward J.W. by providing care, supervision, protection, and support for the child as required by section 9-10-113(2). Additionally, appellant contends that appellee's testimony concerning his financial responsibility was lacking. Appellant states, however, that the biggest deficiency in the proof was that he presented no evidence to the circuit court that demonstrated that it was in the best interest of J.W. for him to be awarded custody as required by section 9-10-113(3).

The majority of appellee's argument for why he should be awarded custody was that appellant had denied his mother a visit in June 2013 and other visits in December 2013 while

there was an ongoing investigation. He also expressed concern about appellant's mental stability and that of her mother, as well as appellant's prior attempts to find work and move out of state with J.W.

Based upon our review of the circuit court's orders and witness testimony, including that of appellant, it is clear that there was universal agreement that it would be in J.W.'s best interest for appellee to have as much time with J.W. as possible. Appellant's only disagreement with the proposal of joint custody and seven-day per-week visits was that she felt it would confuse J.W. at this age, but she presented no evidence to substantiate her concern that permitting J.W. to share equal time with his parents would be confusing to him. Likewise, there was no evidence or testimony presented that J.W. was too young for his father to be awarded custody. The order setting joint custody was entered two weeks before J.W.'s second birthday, and we note that this court has affirmed circuit court decisions to place young children with their fathers. *See Sheppard*, *supra* (ten-month-old child); *Harmon*, *supra* (three-year-old child).

Despite the universal agreement that appellee should be permitted the opportunity to spend as much time with J.W. as possible, the testimony and evidence established that when appellant had temporary, primary physical custody of J.W., she obstructed appellee's ability to spend time with J.W. by denying court-ordered visitation and blocking him from her phone. Due to her actions, appellee filed two verified petitions for contempt, which resulted in a November 20, 2014 order, filed nunc pro tunc to the February 26, 2014 hearing date, finding appellant in "willful contempt" of the circuit court's visitation orders.

We hold that the evidence and testimony at the hearing established (1) that appellant initially exhibited a lack of regard for appellee's opportunity and time to be with J.W. (2) that appellee met his statutory burden for an award of custody; (3) that appellee's request for joint custody provided both parties with meaningful interaction with J.W. which all of the witnesses testified was important and necessary; and (4) that an award of joint custody was in J.W.'s best interest. It is undisputed that appellant testified at the final hearing that she was willing to follow the circuit court's orders in the future and desired to coparent with appellee. Appellee also expressed a desire to co-parent with appellant. Based on the circuit court's opinion that both parties are "appropriate for the placement of the minor child in their care and custody," and its determination to level the playing field by awarding joint custody, we affirm the circuit court's award of joint custody.

Affirmed.

WHITEAKER and HOOFMAN, JJ., agree.

*Jeanette Whatley*, for appellant.

*Appellate Solutions, PLLC d/b/a/ Riordan Law Firm*, by: *Deborah Truby Riordan*, for appellee.

SLIP OPINION