Raymond R. Abramson, Judge, dissenting.
As the majority notes, this case hinges on one paragraph found in an August 29, 2011 Jefferson County Circuit Court default judgment of paternity. Paragraph 13 reads as follows:
Pursuant to Ark. Code Ann. § 9-10-113, ALICIA D. MORRIS [it misidentifies the name of the biological mother; Morris is the maternal grandmother], the woman giving birth to the child(ren) of this action, has legal custody of the minor child(ren) until the child(ren) reaches the age of eighteen (18) years unless a court of competent jurisdiction enters an order placing the child(ren) in the custody of another.
Simply put, I read this default judgment of paternity as just that-a default judgment of paternity, establishing Caleb as the biological father and ordering child support. Significantly, I note that the case was brought by the Arkansas Office of Child Support Enforcement (OCSE), which is prohibited by law from representing parties or asking for a custody determination. In the case before us, custody is established via Arkansas Code Annotated section 9-10-113, the "out-of-wedlock" statute; therefore, this default judgment is not an initial custody determination (i.e., it is not ordered by the court after hearing evidence and weighing factors). Rather than a judicial decision, this is merely a rote statement of applicable Arkansas statutory law. Accordingly, I do not believe that a material change of circumstances is required here. Based on the record before us, I would affirm the circuit court's order.
Without a doubt, this case has precedential value. The majority's opinion holds that a default judgment of paternity in a case brought by the OCSE, with no reference to visitation, will now be considered an initial custody determination. This decision will have long-lasting and, some would argue, harmful repercussions on domestic-relations law in Arkansas. I strongly encourage our supreme court to hear this case should a petition for review be filed so that a definitive ruling on this important issue can be made.
Norwood v. Robinson , 315 Ark. 255, 866 S.W.2d 398 (1993), is the leading case that the majority frequently cites in its decision. In Norwood , our supreme court held that a permanent order establishing paternity and awarding visitation rights to a father was an implicit custody award in the mother. In other words, an award of visitation to the father was tantamount to a finding that he was not entitled to custody and that the custody of the child should be with the mother-by order, not statute. Gibson v. Keener , 2016 Ark. App. 363, at 3, 498 S.W.3d 760, 762 (citing Harmon v. Wells , 98 Ark. App. 355, 358, 255 S.W.3d 501, 503 (2007) ).
However, this case is distinguishable from Norwood because before DeBoer, the father, petitioned the court for custody, there had been no initial custody determination by a judge. In Norwood , paternity was established and reasonable visitation was ordered before the father petitioned the circuit court for a change in custody. Here, DeBoer's paternity was established by a default judgment entered on August 29, 2011, obtained by the OCSE, and while *897 the order incorrectly identifies Morris as G.D.'s biological mother, it clearly and explicitly states that legal custody was established pursuant to statute and not by separate order of the court. Therefore, there was never an initial custody determination.
I also wholeheartedly disagree with the majority's framing of the issue in this case that the "primary question is whether an order clearly enough decides custodial rights." Instead, I believe the essential question here is whether there has been an initial custody determination in a default judgment of paternity order that cites only Arkansas Code Annotated section 9-10-113, and when the circuit court has heard no evidence related to custody or visitation.
The entire concept of material change in circumstances requires the prior establishment of a record of circumstances and conduct of both the mother and the father so that upon a petition for change of custody, the positions of the former and the latter can be more objectively compared and contrasted by the trial judge. Moreover, as so often happens, if the judge hearing the petition for change of custody is different from the original judge, what baseline of conduct and circumstances is the new judge to use to base his or her decision?
Following the majority's logic that this default judgment is somehow a final custody determination, and as such, the father must now show a material change in circumstances in order to change custody, I pose this question: how can a father possibly show a material change when there has never been any proof of his initial circumstances? Prior to DeBoer's petition for change of custody, the only proceeding and court record was the paternity complaint brought by the OCSE, which resulted in a default judgment of paternity. DeBoer was not present, no evidence was heard, and no findings of fact were recorded regarding any custody determination. Now, based on the majority's reasoning, a father will be required to show a material change in circumstances. I respectfully ask, based on what factors or criteria? Just that the child was born out of wedlock? How does a father meet his burden of proof to show a material change in circumstances when there has been not been a hearing or any proceedings on the record to show what the initial circumstances were (i.e., no initial custody determination)? On what factual basis should the circuit court base its conclusion that a material change has occurred? That the father is now present whereas, when the default judgment as to paternity was entered, he was not? Is that the material change in circumstances that the majority now requires?
The majority also cites two cases that our court decided within the last decade: Ryan v. White , 2015 Ark. App. 494, 471 S.W.3d 243, and Donato v. Walker , 2010 Ark. App. 566, 377 S.W.3d 437, and maintains that both cases support its reasoning. I disagree. As I read and interpret each of those cases, I believe they fall more in line with my reasoning. Both the Ryan court and the Donato court each held that no material change in circumstances was required because the biological fathers filed their respective petitions to establish paternity and obtain joint custody at the same time. Inherently, because the child(ren) were born out of wedlock, the mothers in those cases had custody pursuant to statute.[1]
Moreover, the petitions were brought by the fathers in both of these cases, not by *898 the OCSE, an important-if not vital-distinction in my opinion. Again, I stress that because the OCSE is prohibited from being involved in any custody determination, I remain unabashedly confident that the default judgment of paternity could not be an initial custody determination in the instant case in which the OCSE was the moving party.
Although I am of course sensitive to and understanding of the plight and circumstances of unwed mothers, I am not persuaded by the majority's rhetoric that the mother would somehow be placed in an inferior position unless the father is required to prove a material change of circumstances. Arkansas Code Annotated section 9-10-113provides specifically what biological fathers, once they establish paternity, must show the trial court to obtain custody. In pertinent part, that statute provides:
(b) A biological father, provided he has established paternity in a court of competent jurisdiction, may petition the circuit court in the county where the child resides for custody of the child.
(c) The court may award custody to the biological father upon a showing that:
(1) He is a fit parent to raise the child;
(2) He has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and
(3) It is in the best interest of the child to award custody to the biological father.
Ark. Code Ann. § 9-10-113 (b) - (c) (emphasis added).
This court has long held that circuit courts are in the best position to make credibility determinations, and we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. Black v. Black , 2015 Ark. App. 153, 456 S.W.3d 773. Furthermore, there are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving children. Id. As such, I firmly believe circuit courts across our state are well equipped to make such decisions. In fact, making a custody determination (hearing the evidence, judging the credibility of witnesses, and determining the best interest of the child) falls solely within their province-not ours and not pursuant to statute.
In the instant case, the default judgment of paternity specifically stated that custody was established pursuant to statute. Accordingly, I would hold that there had been no initial judicial custody determination at the time DeBoer filed his "Petition for Change of Custody," and thus a showing of a material change in circumstances was not required in this case. I would affirm the circuit court's October 12, 2017 order that found that the default judgment entered August 29, 2011, established DeBoer's paternity of G.D.; that DeBoer was a fit parent to raise G.D.; that DeBoer had assumed his responsibilities toward G.D. by providing care, supervision, protection, and financial support; and that "[i]t [wa]s in the best interest of [G.D.]" to award custody to DeBoer. I do not believe the circuit court erred in awarding custody to DeBoer and granting Rivers reasonable visitation because DeBoer was not required to show and would never be able to show a material change in circumstances because there was never an initial custody determination by the circuit court.
Klappenbach, Murphy, and Brown, JJ., join in this dissent.

I note that the father in Ryan, supra , filed the petition to establish paternity and obtain joint custody before the child was even born.