Cite as 2021 Ark. App. 492

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CV-21-102

| | |
|---|---|
| SHAWNA LYNN POWERS<br>APPELLANT | **Opinion Delivered** December 8, 2021 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72DR-20-629] |
| MICHAEL MARTIN<br>APPELLEE | HONORABLE CRISTI BEAUMONT, JUDGE |
| | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Shawna Lynn Powers appeals the Washington County Circuit Court's order awarding primary custody of her daughter, R.M., to appellee Michael Martin, R.M.'s father. Appellant raises two arguments on appeal: (1) the circuit court erred in finding that venue and jurisdiction were proper in Washington County because appellant had not been served with the lawsuit, and (2) the circuit court committed clear error by refusing to consider joint custody for the child. We affirm.

R.M. was born out of wedlock on February 1, 2020, in Washington County to Shawna and Michael. Shawna brought R.M. to Michael's house when she was three weeks old and left her with him. Shawna briefly moved in with appellee when R.M. was two months old but stayed only two weeks.

On April 30, Michael filed a petition to establish paternity in the Washington County Circuit Court alleging that he is the biological father of R.M. and was bringing the action

to establish paternity under Ark. Code Ann. § 9-10-104 (Repl. 2020). Michael alleged that under Ark. Code Ann. § 9-10-113 (Repl. 2020), it was in R.M.'s best interest for him to have temporary and primary custody with appropriate visitation for Shawna and that he had met all of the statutory requirements. He also asked the circuit court to order Shawna to pay child support, provide health insurance, and for the appointment of an ad litem.

On May 6, John Powers, Shawna's grandfather, filed a petition for emergency relief on Shawna's behalf (she was a minor at this time) in the Marion County Circuit Court alleging that under Ark. Code Ann. § 9-10-113(a), Shawna was the proper legal custodian of R.M. In his petition, John alleged that he was Shawna's custodian. He also alleged that Michael would not allow Shawna to have custody of R.M., and the lack of stability in Michael's home life necessitated an emergency hearing on the matter. On May 7, the Marion County Circuit Court issued an ex parte order awarding custody of R.M. to Shawna under Ark. Code Ann. § 9-10-113(a).

On May 11, Michael filed an amended and substituted petition to establish paternity in Washington County requesting that he be adjudicated R.M.'s biological father and alleging that it is in R.M.'s best interest that he be awarded temporary and permanent custody, subject to appropriate visitation, because irreparable harm could occur if R.M. remained in Shawna's care. Michael attached an affidavit explaining the reasons he believed Shawna to be unfit to care for R.M. Also on May 11, Michael filed a motion for an emergency hearing requesting temporary custody of R.M. based upon his contemporaneously filed amended petition to establish paternity alleging that Shawna did not have reliable housing or employment and that he believed she was using illegal drugs.

On May 12, Shawna filed a motion to dismiss the Washington County case based on venue and Arkansas Rule of Civil Procedure 12(b)(6) alleging that she had been unaware of the Washington County lawsuit until May 11, that the Marion County action had been filed without knowledge of the Washington County petition, that Michael had been served with the Marion County ex parte order on May 8, and that she had not been served with Michael's petition. Shawna also argued that venue in paternity cases is proper in the jurisdiction where the child resides, and Michael can obtain custody only after he establishes paternity in a court of competent jurisdiction, which would be Marion County. She requested that the case be dismissed or transferred to Marion County.

Michael filed a response to the motion to dismiss on May 18 arguing that Shawna's attorney was emailed a copy of the filed petition on May 11. Michael testified that he had been served with Shawna's petition for emergency relief, not an action seeking an adjudication of paternity. He explained that Shawna's attorney represented to his counsel that he would be representing her in this matter on May 11, so personal service had not been made. In his response, Michael argued that venue was only proper in Washington County because that is where R.M. resided when the petition for paternity was filed.

On May 21, the Washington County Circuit Court entered an agreed temporary order between the parties. In this agreed order, the parties agreed that the court had jurisdiction over the parties and subject matter and that venue was proper. The parties stipulated that Michael is R.M.'s biological father, and he was adjudicated R.M.'s father. An attorney ad litem was appointed by the circuit court to represent R.M.'s interests. The parties were to share joint legal and physical custody of R.M. The parties were ordered to

3

try and coordinate any doctor's appointments to allow both parents to attend, child support was not awarded to either party because both parties were economically stressed due to the COVID-19 pandemic, and they were ordered to practice social distancing and to not take R.M. out of their homes unless necessary (e.g., doctor's appointments).

A telephonic hearing on Michael's petition to establish paternity was held in Washington County on October 14. Michael testified that he lives in a house on the outskirts of Fayetteville with his mother and father. He said he bought the home with money he received from a life insurance policy after his grandmother passed away. His home is 3300 square feet and has four bedrooms and three bathrooms. R.M. has a crib in his bedroom and in his parents' bedroom in case he has to work late. He is employed by Arkansas Support Network taking care of people in home-assisted living places and people who have special needs or are handicapped. He works Monday through Friday and usually has the weekends off.

He stated that he and Shawna have one child together. They were not together when R.M. was born; however, he was present for her birth. For the first three weeks of R.M.'s life, she lived in the home with Shawna at her mother, Jennifer Converse. During these three weeks, Michael would go over and see R.M. when he got off of work at Auto Zone (his prior employer). After three weeks, Shawna texted Michael and said Jennifer's house had bedbugs, and she wanted to live with him.

Shawna brought R.M. to Michael, but she did not move in herself until R.M. was two months old. Shawna would come and visit during this time but would not see R.M. Shawna was not working at this time. Michael testified that he had concerns about Shawna's

parenting ability during this time. His first concern is that when R.M. would start crying, Shawna would blow in her face to take her breath away from her to make her stop crying. Shawna would get angry when he told her not to do that. He testified that "if anybody in the house tried to get her to hold R.M., to actually try being a mother, she got very upset." Michael said that Shawna absolutely refused to feed R.M. or change her diaper, would hardly hold her, and did not want R.M. sleeping in the bedroom with her and Michael.

Michael said that initially when Shawna moved out, she did not have any contact with R.M. She eventually called and asked about her but did not ask to see her. He unsuccessfully tried to set up a place for Shawna and R.M. to get together on a couple of occasions. Shawna did not tell Michael that she was going to go live with her grandfather. Michael stated that he had already filed his petition to establish paternity in Washington County when the sheriff arrived at his house with the ex parte order awarding Shawna custody of R.M. He said that shortly after R.M. was taken from his care, there was an emergency hearing at which they both agreed to shared physical custody of R.M. They agreed to a "2/2/3 schedule" that he said at first worked okay. Michael said they would meet in Huntsville for pick up and drop off. He explained that the communication between Shawna and him was horrible. When they met to drop off and pick up R.M., Shawna did not talk. John would always answer any questions.

Michael's mother, Peggy Martin, testified that R.M. came to live with her when she was three weeks old. She said Michael tried very hard to be a good parent. He cared for R.M. without complaint, and if he didn't know what to do, he would ask her. Peggy said

that if R.M. cried, Shawna would either put a pacifier in her mouth or blow in her face, and that you could not get Shawna to stop from blowing in R.M.'s face.

Peggy testified that she takes care of R.M. when Michael is at work. When he comes home, he takes over changing, feeding, and playing with her. Peggy described her house as disruptive when Shawna is there. Peggy said one thing that concerns her about Shawna's parenting is that she does not like to hold R.M.

Shawna testified that she lives with her grandfather, John Powers, in Yellville. She was eighteen years old at the time and had obtained her GED. She said that she would take care of R.M. when she lived at Michael's when he and his parents "allowed" her to do so. She denied smoking cigarettes during her pregnancy. She admitted smoking marijuana but said that she and Michael smoked it together from December 2018 until April 2019.

Shawna said that when she left Michael's house, she tried to take R.M. with her, but he would not let her. She claims she called every day to ask how R.M. was doing but that Michael would not let her talk to her or see her. She testified that she had her learner's driving permit but did not have the time to go take the driver's-license test. Shawna said that she worked at Sonic for one to two months but left after learning that R.M. had COVID-19 because she was "totally stressed out." She testified that she had completed an online parenting class. When asked about her communication with Michael, Shawna said that she was comfortable talking to him over text or the telephone but would "freeze up" when they spoke face to face, so her grandfather would have to fill in the gaps.

She admitted that when her grandfather filed the petition for emergency relief in Marion County on May 6 that R.M. had "never stepped foot" in Marion County as of that

6

date. She denied manipulating the legal system. She denied that she had not communicated with Michael since the agreed temporary order was entered.

The circuit court asked Shawna a couple of questions about her mental health. She testified that she heard voices in her head when she smoked marijuana but does not have any mental-health issues when she is sober. She admitted trying to hurt herself when she was fourteen or fifteen by cutting herself with a row of staples. She did not receive any therapy after that event.

The attorney ad litem then made her recommendation to the circuit court. She stated that one of the major issues in this case is there are two young parents. She believed that Michael had made an effort to step up and take care of R.M. She believed that he had been R.M.'s primary caregiver since her birth. She did not find Shawna's allegations of abuse and a dominant/submissive relationship against Michael to be credible. She stated that Shawna has problems expressing her own thoughts, and John Powers would often talk over her and for her. She believed that the abuse allegations against Michael were initiated by John.

The attorney ad litem stated that Michael is the more stable parent. He owns his own home, has been consistently employed, has transportation, and has taken responsibility for R.M. She stated that Shawna has not always taken responsibility. She recommended that Michael have primary custody and Shawna have standard visitation.

The circuit court issued an oral ruling finding that paternity of R.M. had been established in the agreed temporary order. The circuit court awarded Michael custody of R.M. under Ark. Code Ann. § 9-10-113(b) finding that (1) Michael had proved he is a fit and proper parent to raise R.M.; (2) he had assumed responsibility for providing, protecting,

and financially supporting R.M.; and (3) it was in R.M.'s best interest to award him custody. The circuit court noted that Michael had assumed responsibility from day one, he is more stable, and R.M. had spent the majority of her life with him.

The circuit court noted that Shawna would not be able to take R.M. to a hospital or doctor in the event of an emergency because she does not have a driver's license. Shawna was awarded standard visitation, ordered to pay child support based on a minimum-wage income, and ordered to pay half of medical expenses not covered by the ARKids program. Both parties were prohibited from smoking around R.M. A final order was entered on November 5. Shawna appeals from that order.

The primary consideration in child-custody and visitation cases is the welfare and best interest of the child involved. *Ryan v. White*, 2015 Ark. App. 494, 471 S.W.3d 243. All other considerations are secondary. *Id.* On appeal, this court reviews the evidence de novo, but we will not reverse unless the findings are clearly erroneous. *Id.* This necessarily turns, in large part, on credibility determinations, and we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving children. *Id.* We do not reverse unless there is clear error, meaning that after conducting a de novo review, we are left with a definite and firm conviction that a mistake was made. *Id.*

Arkansas Code Annotated section 9-10-113 sets forth the law regarding custody of a child born out of wedlock:

(a) When a child is born to an unmarried woman, legal custody of that child shall be in the woman giving birth to the child until the child reaches the age of eighteen (18) years unless a court of competent jurisdiction enters an order placing the child in the custody of another party.

(b) A biological father, provided he has established paternity in a court of competent jurisdiction, may petition the circuit court in the county where the child resides for custody of the child.

(c) The court may award custody to the biological father upon a showing that:

(1) He is a fit parent to raise the child;

(2) He has assumed his responsibilities toward the child by providing care, supervision protection, and financial support for the child; and

(3) It is in the best interest of the child to award custody to the biological father.

Ark. Code Ann. § 9-10-113.

I. *Proper Venue and Jurisdiction, Personal and Subject Matter*

A. Personal Jurisdiction

For her first subpoint on appeal, Shawna argues that the Washington County Circuit Court lacked authority to hear this case because she was never properly served; therefore, Washington County was the incorrect venue and did not have jurisdiction over her personally or over the subject matter. We disagree.

Shawna argues that under Ark. R. Civ. P. 4(i), Michael had 120 days to serve her with the petition to establish paternity that was filed on April 30. She argues that she raised this issue of service in her motion to dismiss Michael's petition to establish paternity. According to appellant, there is no evidence of service in the record; therefore, the Washington County Circuit Court should have dismissed the petition at the conclusion of the 120 days.

9

Shawna also alleges that the Washington County Circuit Court's finding in the May 21 temporary order that the court had jurisdiction over the parties and subject matter and that venue was proper constituted a ruling below. In our review of the record, there is no evidence of a ruling by the circuit court regarding personal jurisdiction. In fact, there is no written order regarding appellant's motion to dismiss. The only reference to the motion to dismiss is in the final order, which states that the circuit court previously denied a motion to dismiss for lack of venue.

It is well established that valid service of process is necessary to give a court jurisdiction over a defendant in Arkansas. *Goodson v. Bennett*, 2018 Ark. App. 444, 562 S.W.3d 847. The defense of personal jurisdiction, however, may be waived by the appearance of the defendant without raising an objection. *Id*. Our court has "long recognized that any action on the part of a defendant, except to object to jurisdiction, which recognizes the case in court, will amount to an appearance." *Id*. at 7, 562 S.W.3d at 855 (quoting *Affordable Bail Bonds, Inc. v. State*, 2015 Ark. App. 44, at 4). "In deciding whether a defendant has waived his rights and entered an appearance, a determining factor is whether the defendant seeks affirmative relief." *Id*. A request for affirmative relief is "something more than a 'defensive action' that is inconsistent with the defendant's assertion that the circuit court lacked personal jurisdiction over that person." *Johnson v. Schumacher Grp. of Ark.*, 2019 Ark. App. 545, at 11–12, 589 S.W.3d 470, 477. The most obvious examples are counterclaims, cross-claims, and third party claims in which a defendant "invokes the jurisdiction of the court" and thereby "submits to it." *Id*. at 12, 589 S.W.3d at 477.

10

As indicated above, Shawna entered into an agreed temporary order of custody with Michael prior to the paternity hearing awarding Michael primary custody of R.M. The temporary order found that the Washington County Circuit Court had jurisdiction over both the parties and the subject matter of the dispute. There was no objection to jurisdiction during the final hearing on October 14. We hold that Shawna thereby waived any objection to personal jurisdiction. Shawna clearly acquiesced to the Washington County Circuit Court's jurisdiction by agreeing to the temporary order of custody that was entered by the circuit court, which is inconsistent with her claims of improper jurisdiction and venue. *Id*. Accordingly, the Washington County Circuit Court had personal jurisdiction over Shawna.

B. Venue and Subject Matter Jurisdiction under the UCCJEA

Shawna's next argument is that the Marion County Circuit Court had priority over any custody proceeding under both Arkansas venue jurisprudence and the subject-matter-jurisdiction provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified at Ark. Code Ann. § 9-19-101 to -401 (Repl. 2020). We disagree.

Shawna argues that Marion County has proper venue because Michael was served with John Powers's petition for emergency relief, and she was never served with Michael's petition to establish paternity. She relies on *Carnes v. Strait*, 223 Ark. 962, 270 S.W.2d 920 (1954), as support for this argument, which she intimates is virtually identical to the events in this case. *Carnes* involved two petitions for prohibition in actions based on the same automobile accident where one petition was filed in Arkansas County in July, but the defendants were not served until December; and one petition was filed in Pope County, and all the defendants were served by October 14. *Id*. The supreme court held that the Pope

11

County Circuit Court retained jurisdiction because the service of summons was first, which determined the forum. Shawna's reliance on *Carnes* is unpersuasive as being identical to the facts of this case.

Venue of paternity actions shall be in the county in which the plaintiff resides or in cases involving a juvenile, in the county when the juvenile resides. Ark. Code Ann. § 9-10-102(c) (Repl. 2020). According to the testimony before the court, R.M. was born in Washington County and lived there until R.M. was taken from Michael's custody after the Marion County Circuit Court entered the ex parte order awarding custody of R.M. to Shawna under Ark. Code Ann. § 9-10-113(a).

As with personal jurisdiction, Shawna has waived any argument regarding venue by entering into the temporary agreed order, which found that venue was proper. Furthermore, the record is clear that R.M. spent the majority of her life at the time of the hearing with her father in Washington County and only spent a short amount of time with Shawna in Marion County and only after her grandfather filed the petition for emergency relief. Therefore, under Ark. Code Ann. § 9-10-102(c), Washington County has proper venue for the paternity determination.

Shawna also argues that the Marion County Circuit Court had exclusive subject-matter jurisdiction under the UCCJEA. Specifically, she contends that jurisdiction under the UCCJEA is not waivable, and when a court has made an "initial determination" of child custody "as the Marion County Court did here" that court has exclusive and continuing jurisdiction over the matter. However, the UCCJEA does not apply to intrastate custody

disputes such as this one. *Seamans v. Seamans*, 73 Ark. App. 27, 37 S.W.3d 693 (2001); *Abeyta v. Abeyta*, 2013 Ark. App. 726.

## II. *Joint Custody*

Shawna's second point on appeal is that the circuit court erred by failing to consider awarding both parties joint custody of R.M. She argues that under Arkansas law, joint custody is favored and that the evidence presented showed that joint custody was not in R.M.'s best interest. We disagree. While there is a statutory preference for joint custody, this preference does not override the ultimate guiding principle, which is to set custody that comports with the best interest of the child. *See* Ark. Code Ann. § 9-13-101(a)(1)(A)(i); *Carillo v. Morales Ibarra*, 2019 Ark. App. 189, 575 S.W.3d 151. An award of joint custody is favored in Arkansas, but joint custody is by no means mandatory, and a failure by the circuit court to award joint custody does not mean that the circuit court failed to consider awarding joint custody. *Carillo*, 2019 Ark. App. 189, 575 S.W.3d 151.

Shawna points to the attorney ad litem's testimony that both parties were making affirmative efforts to parent R.M. Moreover, Shawna contends that the concerns about her parenting abilities were from the two-week period when she lived with Michael and his parents. She also argues that the circuit court failed to consider the "power dynamics" of a twenty-three-year-old father and an eighteen-year-old mother "beginning to take control of her own life." These arguments ask us to reweigh the evidence and the credibility of the testimony in a manner that is more favorable to her, which is not our function on appeal. *Id.*

13

In addition, once paternity is established, the presumption of awarding custody to the mother is erased, and the biological father is afforded the same right to establish a parental and custodial relationship with the child to which a married parent is entitled. *Ryan v. White*, 2015 Ark. App. 494, 471 S.W.3 243 (2015). Here, Michael clearly presented evidence that it was in R.M.'s best interest that he be awarded custody. Michael owned his own home, was employed, had transportation, and had been R.M.'s primary caretaker for the majority of her life. The circuit court explained its reasons for awarding custody to Michael and emphasized Shawna's lack of a driver's license and employment. Giving deference to the circuit court's superior position to evaluate the credibility of the witnesses and evidence, we do not believe the circuit court's decision to award Michael primary custody of R.M. was clearly erroneous.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Jeremy B. Lowrey*, for appellant.

One brief only.