## Gregory HARRIS *v.* Stacey Harris GRICE

CA 06-160                                                    244 S.W.3d 9

### Court of Appeals of Arkansas
Opinion delivered November 29, 2006

*Michael Knollmeyer*, for appellant.

*Benjamin D. Hooten*, for appellee.

J OHN MAUZY PITTMAN, Chief Judge. This is an appeal from an order denying appellant's motion for a change in custody of the parties' minor child. On appeal, appellant argues that the trial court's decision to deny his motion for custody was clearly contrary to the preponderance of the evidence and based on an erroneous legal standard. We agree on both points. We reverse and remand for entry of an order granting custody and appropriate child support to appellant and granting appellee standard visitation.

The appellant is the father of K.H., who was born in July 1996. Appellee is the child's mother. The parties divorced in September 1999. By agreement of the parties, they were awarded joint legal custody with physical custody being awarded to appellee subject to liberal visitation by appellant. Subsequent to the parties' divorce, the child was diagnosed with a form of autism known as Asperger's disease. Subsequent concerns over appellee's ability to provide the increased degree of behavioral and educa-

tional assistance necessary for a child suffering from this disorder led to an agreed order in October 2003 expressly allowing appellant to participate in decisions regarding the child's medical care and expressly requiring the parties to ensure that K.H. regularly attend school and to assist him with all homework assigned during the time each had custody of or visitation with the child. One month following the agreed order, appellee filed a motion to relocate out of state with the child. This motion was denied in an order of April 2004 expressly stating that such a move would be contrary to the child's best interest because it would prevent appellant from exercising the extensive visitation afforded him to assist the child in developing his educational and social skills. In June 2005, appellant filed a petition for change of custody alleging, inter alia, that appellee had failed to and was unable to provide K.H. with the degree of behavioral, social, and educational assistance his condition requires. After a series of hearings, the trial court found that appellant had "raised serious matters which this Court finds to be true," but refused to change custody.

The superior position, ability, and opportunity of the trial court to observe the parties carries great weight in cases involving children, *Watts v. Watts*, 17 Ark. App. 253, 707 S.W.2d 177 (1986), and we therefore give special deference to the trial court's assessment of the credibility of the witnesses in child-custody cases. *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999). We review the evidence de novo on appeal, but we will not reverse the findings of the court unless it is shown that they are clearly contrary to the preponderance of the evidence. *Dunham v. Doyle*, 84 Ark. App. 36, 129 S.W.3d 304 (2003). A finding is clearly against the preponderance of the evidence when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

The matters raised by appellant, and found to be true by the trial court, centered around K.H.'s particularized needs resulting from his disorder. Dr. Deane Baldwin, who had treated K.H. for four years at the time of trial, testified that the child suffers from a form of autism called Asperger's disease. This is a severe, pervasive developmental disorder that is manifested by flawed social skills, repetitive behavior, and difficulty in communication. K.H. displays all three symptoms. There is no cure for the condition, but the symptoms can be treated. Treatment is difficult and requires a great deal of ancillary services. Most children with autistic disorders are mentally retarded or suffer from severe learning difficul-

ties. K.H., Dr. Baldwin testified, is normal in some areas of central nervous system functioning, but is deficient to the point of being mildly retarded in others, including the ability to understand the inflections and body language of others. He also stated that K.H.'s difficulties were very frustrating to the child and thus sometimes resulted in negative thoughts, explosive behavior directed at others, or hitting himself, and that the child has difficulty developing motor skills. Finally, Dr. Baldwin stated that change is extremely difficult for children with pervasive developmental disorders, that K.H.'s home life had been chaotic, that his mother had him admitted to Bridgeway immediately before trial, and that he needed stability.

Shannon Resor testified that she had eight years of teaching experience and that she had been K.H.'s third-grade teacher last year. She stated that the child's autism caused him difficulty in motor skills and coordination and resulted in behavioral and academic oddities that made him stand out. For example, K.H. tended to become more upset about what other children said or did than other children would. Although K.H.'s reading skills progressed from second- to third-grade level, he continued to have trouble with memorization, math, and small-motor skills such as handwriting.

Ms. Resor testified that she noticed a difference in K.H.'s behavior during certain weeks of the month, during which time the child would come to school disheveled, late, or without breakfast, and would therefore be agitated when he arrived. On other days, the child would be fine when he arrived, and would appear with his homework completed. The latter days, Ms. Resor subsequently learned, were when K.H. had been with his father pursuant to the prior order giving appellant custody of the child one week per month and on weekends. She testified that K.H. never turned in homework when he had been in appellee's custody the previous day. She testified that she saw appellant frequently at school, that he had attended all parent-teacher conferences, had participated in or organized many school events, and that he would regularly come and have lunch with his son. In contrast, Ms. Resor saw appellee only once, by chance, when appellee was sitting in the principal's office at the beginning of the school year. Appellee attended no parent-teacher conferences, never attended any class parties or functions, never contacted her about K.H.'s progress or schoolwork, and never turned in any of the child's homework.

Ms. Resor said that appellant was a "difference maker." She noticed positive differences when K.H. was with his father. K.H. was happier, calmer, and performed better during those weeks when he stayed with his father. Appellant had, over the summer, procured a third-grade basal reader and read it with K.H. before his class began it in the third grade, resulting in a significant increase in the child's reading ability. Appellant did supplementary work with K.H. on his multiplication tables in addition to normal class work at Ms. Resor's suggestion, turning in the extra assignments after helping the child to master them. When Ms. Resor told appellant that she was having great difficulty assessing K.H.'s abilities because his printing was illegible, appellant procured cursive writing samples and worked intensively with K.H. on cursive writing. After one week of work, K.H. mastered cursive writing. The difference between the examples of the child's handwriting before and after this effort is breathtaking; the former is completely indecipherable, the latter perfectly legible. The sudden change created a stir with K.H.'s occupational therapist at school. Ms. Resor testified that it normally took a child *without* a motor skill disability one year to master cursive writing; with appellant's help, K.H. did it in a matter of days. She also testified that appellant worked intensively to help K.H. learn the skills necessary to make and keep friends, teaching him to kick a ball when his inability to do so became frustrating and embarrassing in physical education class. He also established an internet site for the class with K.H. as the webmaster in order to help him with his social functioning and to overcome the stigma attached to his disability. Appellant took photographs of children at several school functions he attended and posted them on K.H.'s site. Ms. Resor said that the class enjoyed the web site and that it helped to make K.H. popular with his classmates. Finally, she stated that K.H. and appellant are very close, and that the child was happier and calmer and performed better when he was with appellant.

There are numerous other examples of appellant's fruitful work with his son. Appellant read several books on Asperger's and obtained teaching material designed specifically to help children with that disorder, such as a program designed to help such children identify the significance of facial expressions. He also helped K.H. write a rule book called "How to Make Friends" to help the child overcome the flawed social and communication skills symptomatic of his disorder. When K.H. told appellant that people were making fun of him because he could not ride a

bicycle, appellant made that skill a goal for one of the "weekly challenges" he participated in with K.H. and, after four days and hundreds of attempts, the child was able to maintain his balance and now rides as well as an adult. Such challenges are a regular part of the relationship between appellant and the child. Clearly, appellant has a faith in K.H.'s ability to overcome much of his disability, and the child has displayed a willingness and tenacity that justifies that faith. What they have accomplished together is little short of miraculous.

The principles governing the modification of custodial orders are well-settled and require no citation. The primary consideration is the best interest and welfare of the child. All other considerations are secondary. Custody awards are not made or changed to punish or reward or gratify the desires of either parent. Although the trial court retains continuing power over the matter of child custody after the initial award, the original decree is a final adjudication of the proper person to have care and custody of the child. Before that order can be changed, there must be proof of material facts which were unknown to the court at that time, or proof that the conditions have so materially changed as to warrant modification and that the best interest of the child requires it. The burden of proving such a change is on the party seeking the modification. *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001).

In its order, the court stated that appellant had raised important matters that he expressly found to be true, but nevertheless denied the requested change of custody. The judge's reasoning for this anomalous decision was stated in his ruling from the bench, where he said that, although appellant's concerns were very serious and the judge believed them, he had, in latter years, come to believe that "these custody fights were just as bad for the children" and that he wanted "to discourage these custody cases." We hold this to be clear error. The child in this case had already undergone the stress and emotional trauma involved in a custody contest. The requirements of changed circumstances and best interests, together with equity's unique power to fashion remedies, have long been deemed adequate protection against harassing, frivolous, or abusive petitions to change custody. To deny a change in custody that we find to be clearly warranted by changed circumstances and to be manifestly in the child's best interest is to

ignore the polestar consideration in every child custody case, the welfare of the individual child. *Marler v. Binkley*, 29 Ark. App. 73, 776 S.W.2d 839 (1989).

Reversed and remanded with directions to award full custody to appellant and to determine reasonable support payments and standard visitation. The mandate in this case shall issue immediately.

GRIFFEN and GLOVER, JJ., agree.