Jessica Leann HARMON *v.* Frank Douglas WELLS

CA 06-913                                          255 S.W.3d 501

Court of Appeals of Arkansas
Opinion delivered April 11, 2007

*Daniel Stewart*, for appellant.

*Caitlin M. Stewart*, for appellee.

LARRY D. VAUGHT, Judge. On appeal, appellant Jessica Harmon argues that the trial court erred by entering an order of custody in favor of appellee Frank Wells without requiring him to demonstrate that a material change in circumstances had occurred. Alternatively, Harmon argues that the trial court's findings relating to Wells's fitness to parent the child are clearly erroneous, arbitrary and groundless, and against the preponderance of the evidence. We affirm.

On January 21, 2004, Wells initiated an action to establish paternity and to gain custody of his minor son, who was born out of wedlock on December 20, 2002. On April 5, 2005, an order bearing the title "Temporary Order" was entered establishing Wells as the child's biological father and awarding Wells visitation. On February 7, 2006, a final custody hearing was conducted. In its final order, the trial court reasoned that "if there has been an order of paternity [that] also made a final adjudication as to the primary care and custody then the father is required to prove a material change in circumstances ... if there has been no such order, then the father is not required to prove a material change in circumstances." The court noted that because it had not previously resolved the custody issue, Wells was only required to prove that he was a fit parent and that it was in the child's interest to be placed in Wells's custody.

At the outset, the court found that Wells was a fit parent despite Harmon's allegations otherwise. The court's finding of fitness specifically addressed Harmon's most serious allegation — that she had been raped by Wells on April 11, 2004. The court found Harmon's "testimony in this regard not to be credible." Instead, the trial court believed Wells's explanation — that the intercourse was consensual — noting that Harmon had made contact with Wells several times after the alleged rape and that her charge of rape came *after* he filed his petition for custody. Further, the trial court credited Wells's testimony that the parties had previously engaged in deviate sexual activity where Harmon had requested that Wells tie her up during intercourse. The court noted that Harmon had a motive to fabricate and exaggerate her claims against Wells in order to "damage or destroy his claim for custody and possibly result in his [long-term] incarceration."

Wells had eventually pleaded guilty to false imprisonment, but he testified that he never abused Harmon in any way during their time together. The judge noted that there "was no other evidence indicating that [Wells was] violent or abusive."

As to Harmon, the court found that she had subjected the child to "severe neglect" and "unacceptable parental behavior" based — at least in part — on an incident that occurred when the child was one year old and in his mother's care. Wells testified that he came home from work and found empty whiskey bottles and condom wrappers in a room, with his child sleeping under a bed. Wells testified that it was after this event that he petitioned for custody. Finally, the court found that Harmon had engaged in several sexual relationships with other men during the time she lived with Wells and that one of her paramours had a criminal history.

According to the custody order, the evidence also established that Wells's employment history was far more stable than Harmon's. The trial court found that she had "held at least fourteen different jobs in 2003," yet Wells had held the same job "since the minor's birth." The court concluded that Wells had a "greater individual discipline toward earning an income to support and care for the minor child." The court also acknowledged Wells's "extensive involvement in the minor child's life since birth in both providing monetary and non-monetary parental support." Finally, the court expressed concern that at one point, Harmon attempted to get Wells to pay her money in exchange for time with the child. The court's order admonished Harmon's by stating that a "child's access to see the other parent should not be considered something to barter or bargain with like some form of perverse currency."

The court ultimately concluded that the "totality of the evidence establishes that [Wells] is more stable than [Harmon] financially, emotionally[,] and in the moral sense." The court found that Wells "and his new wife are sincerely concerned with the child's well being and [Wells] has demonstrated by his past conduct that he is capable of providing for the minor child's ... needs in a stable environment." Then, the court ordered that the minor child be placed in Wells's physical and legal custody. It is from this decision that Harmon appeals.

We first consider whether the trial court erred by not requiring that Wells prove a material change of circumstances prior to the entry of the custody order in his favor. We begin our

analysis with an examination of the two controlling cases: *Sheppard v. Speir*, 85 Ark. App. 481, 157 S.W.3d 583 (2004), and *Norwood v. Robinson*, 315 Ark 255, 866 S.W.2d 398 (1993). These cases attempted to clarify Arkansas Code Annotated § 9-10-113 (Supp. 2003), which provides that an illegitimate child shall be in the custody of its mother unless a court of competent jurisdiction enters an order placing the child in the custody of another party. *Freshour v. West*, 334 Ark. 100, 971 S.W.2d 263 (1998). However, according to the statute, a biological father may petition the court for custody if he has established paternity in a court of competent jurisdiction. *Id.* Following a three-part finding — that the father is fit, that he assumed financial and supervisory support for the child, and that it is in the child's best interest — custody will be awarded to the biological father. Ark. Code Ann. § 9-10-113.

In *Norwood*, our supreme court added to these three requirements by requiring that a father attempting to gain custody of a previously identified "illegitimate child" also show a "material change of circumstances" warranting a change of custody. The court reasoned that an order establishing paternity and visitation "gave the statutory determination the effect of a judicial determination. Implicit in the order of paternity establishing visitation was a determination that custody should continue to rest in the mother." *Norwood*, 315 Ark. at 259, 866 S.W.2d at 401. In other words, an award of visitation to the father was tantamount to a finding that he was not entitled to custody and that the custody of the child should be with the mother — by order, not statute. Therefore, the father was prohibited from gaining custody of the child absent a showing of changed circumstances.

Our court further developed the law relating to the illegitimate-child statute in the *Speir* case. We distinguished *Norwood* by noting that its resolution turned on the fact that the paternity order "granted appellant reasonable visitation and set the amount of child support. Two years following the entry of the paternity order, the appellant in *Norwood* sought to change custody." *Speir*, 85 Ark. App. at 490, 157 S.W.3d at 589. However, in *Speir* the appellant petitioned for custody *prior* to the entry of the paternity order (these petitions were eventually consolidated), and we noted that the visitation order entered was *temporary* in nature, as it specifically reserved the determination of custody for a future date. We then concluded that "because the issue of custody was not resolved in the paternity order, Speir was not required to show a material change of circumstances." *Id.*

Here, Harmon concedes that the order was titled "Temporary Order" but points out that unlike the order analyzed in *Speir*, this order did not set a final hearing date and ended with the words, "this Court retains jurisdiction of this case for such further orders as may be appropriate for the enforcement of this Temporary Order and for all matters relating to custody, visitation and support of the minor child." She argues that "these are not the words of a temporary order." She also notes that "ten months later, a custody hearing [was] held."

She also points out that a biological father may petition the circuit court for custody only when "he has established paternity in a competent jurisdiction." Ark. Code Ann. § 9-10-113(b). According to her position, because Wells's petitions for custody and paternity were filed at the same time, the order awarding Wells visitation (which was entered with the order establishing paternity) "was not a temporary order but a permanent order since the petition for custody cannot be filed or considered until paternity is established."

■ Contrary to Harmon's assertion otherwise, the law does not prohibit a trial court from entering a temporary order of visitation in favor of the father at the same time that he is found to be the father and reserving the issue of custody for a later time. *Speir*, 85 Ark. App. at 490, 157 S.W.3d at 589. Therefore, the resolution of the issue before us rests entirely on whether the visitation order was permanent or temporary. If it was permanent, the trial court should have followed *Norwood* and required a change of circumstances. If it was temporary, the trial court should have followed *Speir* and should have concluded that there was no need for the father to prove changed circumstances. Although the order did not set a future date for a custody hearing, we conclude that the order was temporary in nature because it did not resolve the issue of custody. As such, the trial court was correct in not requiring a showing of changed circumstances.

We next consider Harmon's alternative argument that the trial court's findings relating to Wells's fitness to parent the child were clearly erroneous. If the court's best-interest finding was supported by a preponderance of the evidence, it is not clearly erroneous. *See Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003). Although we review this determination de novo, we will not reverse unless we are left with a definite and firm conviction that a mistake has been committed. *Id.* Further, because the

preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the trial court to evaluate the witnesses, their testimony, and the child's best interest. *Word v. Remick*, 75 Ark. App. 390, 58 S.W.3d 422 (2001).

■ Although we are troubled by the fact that during the pendency of the custody dispute Wells was accused of raping — and pleaded guilty to falsely imprisoning — Harmon, the trial court's factual findings made it clear that it found Harmon to be incredible. Based on our review standard and the specific findings of the trial court relating to Harmon's motive, untimeliness in reporting the rape, and contact with Wells following the alleged assault, we defer to the trial court on the resolution of this serious charge. Further, the bulk of the remaining evidence strongly supports the trial court's decision to place custody of the parties' child with Wells. Therefore, we affirm on this point as well.

Affirmed.

GLADWIN and BIRD, JJ., agree.