2010 Ark. App. 566

**Sabrina DONATO, Appellant**

**v.**

**Clint WALKER, Appellee.**

**No. CA 10–136.**

Court of Appeals of Arkansas.

Sept. 1, 2010.

Brent M. Langdon, Lisa McPherson, Langdon Davis, Texarkana, TX, Brandon J. Harrison, Barrett & Deason, P.A., Jonesboro, AR, for appellant.

Michey Buchanan, Ashdown, AR, George M. Matteson, Harrelson, Horton & Matteson, P.A., Texarkana, AR, for appellee.

RITA W. GRUBER, Judge.

Sabrina Donato appeals from an order awarding custody of the parties' minor daughter, S.W., to the child's father, Clint Walker. On appeal, Ms. Donato contends that the circuit court erred by awarding custody to Mr. Walker for three reasons: (1) by failing to require Mr. Walker to provide sufficient evidence of a material change in circumstances; (2) by basing its best-interest analysis on its harsh moral judgment of Ms. Donato's actions; and (3) by failing to find exceptional circumstances to justify separating S.W. from her half sister. We find no error and we affirm the circuit court's order.

Ms. Donato and Mr. Walker met in California, lived there together for several years, and conceived the child who is the subject of this lawsuit. S.W. was born on October 8, 2004, in Oceanside, California. Shortly thereafter, the parties moved with the child to Arkansas, where they lived for three years with Mr. Walker's parents in Ben Lomand, Arkansas, until they bought a house in October 2008. K.D., Ms. Donato's eight-year-old daughter, also lived with Ms. Donato and Mr. Walker.

On June 19, 2009, Mr. Walker discovered that Ms. Donato had been exchanging explicit photographs through email with a married man. Mr. Walker confronted Ms. Donato about the photographs in a telephone conversation. At the time, S.W. and K.D. were at the home of Mr. Walker's parents. After she hung up the phone, Ms. Donato drove to the Walkers' home, got the children out of bed, and drove them home. Mr. Walker and his father called 911 and then followed Ms. Donato to the house. The parties got into an argument when they arrived, Mr. Walker got in his truck with S.W., and K.D. also got in the truck. Ms. Donato pulled the door to the truck open, told K.D. to get out of the truck, and tried to grab S.W. The parties struggled with the keys to the truck and Ms. Donato fell on the ground.

On June 22, 2009, Mr. Walker filed a petition for order of protection, and the court entered an ex parte temporary order of protection that day. The court also awarded temporary custody of S.W. to Mr. Walker. On June 26, Mr. Walker filed a petition to establish paternity and for custody of S.W. After a hearing on the ex parte order on July 9th, the court kept temporary custody with Mr. Walker and scheduled a final hearing on the order of protection, paternity, and custody for August 6, 2009.

After hearing testimony from Mr. Walker, Ms. Donato, Mr. Walker's father, and Katie Cody (a friend of Ms. Donato's), the court entered an order that established paternity in Mr. Walker, awarded custody of S.W. to Mr. Walker, ordered Ms. Donato to pay child support, and granted Ms. Donato standard visitation with S.W. Specifically, the court found Mr. Walker to be the more credible witness and determined that he was a fit parent to raise S.W.; that he had assumed a responsibility to the child from birth, providing care, supervision, and protection; and that it was in S.W.'s best interest for Mr. Walker to have custody. Ms. Donato filed this appeal.

We review child-custody cases de novo, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 77, 110 S.W.3d 731, 735 (2003). Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 44, 256 S.W.3d 528, 529 (2007). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving minor children. *Judkins v. Duvall*, 97 Ark. App. 260, 267, 248 S.W.3d 492, 497 (2007).

Ms. Donato first argues that Mr. Walker did not satisfy the requisite statutory and case-law elements to obtain custody of S.W. The governing statute in this case is Ark.Code Ann. § 9–10–113 (Repl.2009), which provides as follows:

(a) When a child is born to an unmarried woman, legal custody of that child shall be in the woman giving birth to the child until the child reaches eighteen (18) years of age unless a court of

competent jurisdiction enters an order placing the child in the custody of another party.

(b) A biological father, provided he has established paternity in a court of competent jurisdiction, may petition the circuit court in the county where the child resides for custody of the child.

(c) The court may award custody to the biological father upon a showing that:

(1) He is a fit parent to raise the child;

(2) He has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and

(3) It is in the best interest of the child to award custody to the biological father.

Ms. Donato does not claim that the court failed to make the necessary statutory findings or that these findings were clearly erroneous. Rather, Ms. Donato claims that case law, specifically *Norwood v. Robinson*, 315 Ark. 255, 866 S.W.2d 398 (1993), requires an unmarried biological father to establish a material change in circumstances in addition to the criteria set forth in section 9–10–113(c) in order to obtain custody.

In *Norwood*, a finding of paternity was made in 1989 that included provisions for visitation and payment of child support by the father. *Norwood*, 315 Ark. at 256, 866 S.W.2d at 399. Custody vested in the mother pursuant to Ark.Code Ann. § 9–10–113(a). Over two years later, in 1991, the father filed a motion for a change of custody. *Id.* at 257, 866 S.W.2d at 400. On appeal from the denial of his motion, the father contended that the trial court erred by requiring him to show a material change of circumstances since the finding of paternity. *Id.* at 256, 866 S.W.2d at 399. The court recognized that in a traditional change-of-custody case, a party must show a change in circumstances since the initial custody order. *Id.* at 259, 866

S.W.2d at 401. The court rejected the father's contention that there had been no initial determination of custody and held that an initial custody award in the mother was implicit in the paternity order establishing visitation two years earlier. *Id.* Thus, the court held that the same standards that applied in other custody determinations must be applied to the situation in *Norwood*—that is, a material change in circumstances must be shown for a change of custody. *Id.*

This court has distinguished *Norwood* in several cases where the father requested custody at the time paternity was established—that is, there had been no initial custody determination. In 2004, this court decided *Sheppard v. Speir*, 85 Ark. App. 481, 157 S.W.3d 583 (2004). In *Speir*, the mother appealed the trial court's order awarding custody to the biological father, contending that the father failed to prove a material change in circumstances. *Speir*, 85 Ark. App. at 489, 157 S.W.3d at 588. We rejected her argument and distinguished the case from *Norwood* because Mr. Speir's petition for custody was filed before an order of paternity had been entered and was consolidated with his paternity complaint. We held that the issue of custody had not been resolved and therefore Mr. Speir was not required to show a material change in circumstances.

In two subsequent cases, we clarified that whether a biological father must show a material change in circumstances in addition to the requirements set forth in Ark.Code Ann. § 9–10–113(c) depends upon whether there has been an initial custody determination at the time the father petitions for custody. *See Hicks v. Cook*, 103 Ark. App. 207, 210, 288 S.W.3d 244, 246–47 (2008); *Harmon v. Wells*, 98 Ark. App. 355, 255 S.W.3d 501 (2007). In this case, Mr. Walker sought to establish

paternity and obtain custody at the same time. The parties lived together with S.W. as a family until June 2009, when Mr. Walker filed his petition. There had never been an order awarding custody of S.W. to either party before that time. The parties agreed that the August 6, 2009, hearing was a final hearing on the order of protection, paternity, and custody. So Mr. Walker was not required to show a material change of circumstances in order to obtain custody of S.W.

Ms. Donato also contends that the trial court erred in "divesting her of custody" due to the court's perceived concern with her moral fitness based primarily on her "limited lapse in judgment." She cites numerous cases that have addressed what constitutes moral inadequacy sufficient to justify a change of custody. In addressing this argument, we begin with the primary consideration in child-custody cases: the welfare and best interests of the child involved. *Walker v. Torres*, 83 Ark. App. 135, 137, 118 S.W.3d 148, 150 (2003). We also recognize that we must give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 44, 256 S.W.3d 528, 529 (2007).

The court did not determine it was in S.W.'s best interest to be placed in Mr. Walker's custody solely because Ms. Donato exchanged explicit photographs through email with a married man. In addition to its determination that Ms. Donato's behavior presented a moral problem for S.W., the trial court also specifically found that Mr. Walker was a more credible witness than Ms. Donato; that Ms. Donato's temper, yelling, and screaming scared the children; that the court believed Mr. Walker's testimony that Ms. Donato attempted to commit suicide; that Ms. Donato had her children take a "seductive"

picture of her to email to a married man; that there was testimony that Mr. Walker was an "exceptional" parent; that Mr. Walker was a fit parent and had assumed a responsibility for S.W. from birth, providing care, supervision and protection; and that Mr. Walker had a stable job. At the hearing, Mr. Walker testified that his daughter was very happy living with him and his parents and that she had spent most of her life in that house; that he and S.W. enjoyed doing activities together; that his schedule minimized disruption to S.W.'s schedule and maximized his time with her and his family; and that he lived with and cared for S.W. in Arkansas for two-and-a-half months before Ms. Donato moved from California to Arkansas. Ms. Donato admitted that Mr. Walker was capable of taking care of S.W. Ms. Donato also testified that she was in college and working full time at the Clinique counter at Dillard's. Testimony of Mr. Walker, his father, and Ms. Donato indicated that Ms. Donato often did not get home from work and school until after 9:00 p.m. After a de novo review, we cannot say that the trial court's finding that it was in S.W.'s best interest for Mr. Walker to be awarded custody was clearly erroneous.

Finally, Ms. Donato argues that the trial court erred by separating S.W. from her sibling without proof of exceptional circumstances. She quotes from *Sykes v. Warren*, 99 Ark. App. 210, 217, 258 S.W.3d 788, 793 (2007), in which this court recognized that "unless exceptional circumstances are involved, young children should not be separated from each other by dividing their custody." Once again, we begin with the primary consideration in child-custody cases: the welfare and best interests of the child involved. *Torres*, 83 Ark. App. at 137, 118 S.W.3d at 150. All other considerations are secondary. *Id.* While one factor the court must consider

in determining the best interest of the child is whether the child will be separated from her siblings, the polestar consideration in every child-custody case is the welfare of the individual child. *Harris v. Grice,* 97 Ark. App. 37, 42, 244 S.W.3d 9, 13–14 (2006).

We said in *Middleton v. Middleton,* 83 Ark. App. 7, 15, 113 S.W.3d 625, 630 (2003), that the prohibition against separating siblings in the absence of exceptional circumstances does not apply with equal force in cases where the children are half siblings, as they are in this case. In *Eaton v. Dixon,* 69 Ark. App. 9, 9 S.W.3d 535 (2000), we affirmed a custody order which resulted in the separation of half-siblings, recognizing that trial judges cannot always provide "flawless solutions to unsolvable problems, especially where only limited options are available." *Id.* at 13, 9 S.W.3d at 537–38 (quoting *Respalie v. Respalie,* 25 Ark. App. 254, 257, 756 S.W.2d 928, 930 (1988)). Because Ms. Donato's older daughter, K.D., is not Mr. Walker's daughter, the trial court had no authority to make a custody determination as to her. The court found that it was in S.W.'s best interest for Mr. Walker to have custody of S.W. Ms. Donato was granted visitation with S.W., and there is no testimony to suggest that the children will not be together during that time. We hold that it was not error for the court to separate the siblings in this case.

Affirmed.

VAUGHT, C.J., and BROWN, J., agree.