BRANDON J. HARRISON, Judge
This is a custody case, with a legal twist. Karley Rivers appeals the circuit court's order that switched custody of her minor son, G.D., to his father, Caleb DeBoer. The parents were not married when their son was born. Rivers had custody of G.D. from his birth in 2009 until the court changed that in its 12 October 2017 order. She argues that the circuit court erred by awarding custody to DeBoer because the "proof did not evince a material change in circumstances warranting a custody modification," and the change was not otherwise in G.D.'s best interest.
The twist is that an interpretive tussle has arisen over how to apply an Arkansas statute addressing custody of children born out of wedlock-and the case law that has dealt with it-to this case's facts and procedural course. Some history will place the parties' dispute, and this court's disagreement over how to decide it, in context.
I.
In June 2011, the Arkansas Office of Child Support Enforcement (OCSE) filed a paternity complaint in the Jefferson County Circuit Court. The complaint alleged that DeBoer is the father of G.D., who was born out of wedlock to Karley Rivers in 2009. In the paternity complaint, Alicia Morris, the child's maternal grandmother, was listed as G.D.'s then custodian. DeBoer did not answer the complaint, so OCSE moved for a default judgment.
It received one, in August 2011, when the circuit court entered a judgment of paternity, determined that DeBoer is G.D.'s father, and required him to start paying child support, among other things. The judgment misidentified Morris (the maternal grandmother) as G.D.'s biological mother but to no ill effect. More to the point, the judgment states, in paragraph 13,
Pursuant to Ark. Code Ann. § 9-10-113... the woman giving birth to the child(ren) of this action, has legal custody of the minor child(ren) until the child(ren) reaches the age of eighteen (18) years unless a court of competent jurisdiction enters an order placing the child(ren) in the custody of another.
*889 We will say more about this paragraph, and the court's judgment as a whole, in due course. For now, just know that paragraph 13 has a leading role in this appeal.
No court interventions occurred in the family's lives custody wise, as far as the record shows, for approximately five years after the 2011 paternity judgment was entered. In mid-July 2016, however, DeBoer filed a change-of-custody petition against Rivers (and grandmother Morris). In his "Petition for Change of Custody," DeBoer admitted that the circuit court adjudicated him G.D.'s father in the 2011 paternity case and asked the court to determine that a material change in circumstances had occurred since that time. DeBoer's petition sought primary physical custody of G.D. The father further alleged that "it is currently in the best interest of [G.D.] that custody be placed" with him. Rivers's drug use was the concern in July 2016.
Rivers responded. She admitted that the court had previously adjudicated DeBoer's paternity, explained that G.D. was residing with Rivers in her mother's home, and otherwise opposed DeBoer's petition. In her counterpetition, Rivers stated that DeBoer had "stated no grounds or any facts or allegations that would indicate a material change in circumstances has occurred." DeBoer responded.
Months later, in February 2017, DeBoer filed an emergency petition for temporary custody of G.D. because Rivers was in a drug-rehabilitation facility in Florida, which made her unable to care for G.D. A couple of weeks later, Rivers and DeBoer jointly moved to consolidate OCSE's decided paternity case with the pending custody case. The circuit court did so.
In May 2017, the court held a hearing on DeBoer's custody petition. After receiving testimony from DeBoer, Rivers, DeBoer's employer, and DeBoer's wife, the court continued the hearing until September. During part two of the custody hearing, Rivers called her father and DeBoer's mother to testify. Rivers testified, too. And DeBoer took the stand to rebut some of his mother's testimony; then the parties made closing arguments. The court did not rule from the bench.
Instead, on 12 October 2017, the court entered a written order finding that the August 2011 default judgment had established DeBoer's paternity of G.D., that DeBoer was fit to raise G.D., and that DeBoer had assumed his responsibilities toward G.D. by providing care, supervision, protection, and financial support. The court also found that "[i]t [wa]s in the best interest of [G.D.]" to award custody to the father. (These findings comport with Ark. Code Ann. § 9-10-113 (Repl. 2015) ). Consequently, the court awarded custody to DeBoer and granted Rivers reasonable visitation. The order also noted that to the extent grandmother Morris had made a claim for custody, the claim was abandoned and dismissed. Rivers filed a timely notice of appeal, and here the case has landed.
II.
To the main point: did the circuit court err by awarding custody to DeBoer because, according to Rivers, the "proof did not evince a material change in circumstances warranting a custody modification"? A rather common legal question in this court has taken an uncommon turn. This is so because, as the dissent shows, a disagreement has arisen over whether DeBoer had to plead and prove that a material change in circumstances had occurred. More specifically, the issue is whether DeBoer was required to establish that a material change in circumstances had occurred between the time the August 2011 "Default Judgment of Paternity" was entered and when he filed for the change in *890 July 2016. Our dissenting colleagues believe the father was not required to prove such a change because an initial custody determination was not made in the 2011 paternity judgment. In other words, because the custodial provision in the paternity judgment was entered pursuant only to the out-of-wedlock statute, it is not a judicial determination of custody.
We respectfully disagree with our colleagues on this important facet of child-custody law. What follows is our view of Arkansas law on when the biological father seeking custody of a child born out of wedlock must show a material change in circumstances.
A.
The August 2011 Judgment. Did the circuit court's judgment place custody of G.D. with his mother, Rivers? If the judgment placed custody of the child with his mother-and if the judicial determination was a final custodial decision rather than a temporary one-then a legal consequence attaches. The consequence is that DeBoer was required to prove in his 2016 change-of-custody case that a material change in circumstances had occurred since the 2011 paternity judgment was entered.
Here we return to the paragraph in the court's paternity judgment over which there are competing interpretations:
13. Pursuant to Ark. Code Ann. § 9-10-113, [KARLEY RIVERS], the woman giving birth to the child(ren) of this action, has legal custody of the minor child(ren) until the child(ren) reaches the age of eighteen (18) years unless a court of competent jurisdiction enters an order placing the child(ren) in the custody of another.
We read paragraph 13 to state that, as of 29 August 2011, Rivers had custody of G.D. until a subsequent court order places him in the custody of another person, or he turns eighteen, whichever event would come first. The authority under which the court initially gave Rivers custody was based on a statute that has been in place since 1987. The court simply exercised its authority under law and entered an enforceable judgment. Because the judgment placed custody of G.D. with Rivers, it is, by definition, the first (initial) custody order. Whether it was a temporary or a final decision then becomes the next pivotal question.
Revisiting the parties' court papers is valuable here. Each parent seems to have understood that DeBoer had to plead and prove a material change in circumstances when he sought custody of G.D. DeBoer's petition, which we mentioned earlier, included these paragraphs and prayer for relief:
1. By Order of the Circuit Court of Jefferson County, Arkansas, Domestic Relations Division, No. DR-2011-855 ... Caleb J. DeBoer was adjudicated the father of G.D., minor ... born out of wedlock to Karley Rivers.
2. In that Order Karley Rivers was granted custody of the minor child.
....
9. A change of circumstances has occurred and it is currently in the best interest of the minor child that custody be placed in [Caleb] and that Defendants Karley Rivers and Alicia Morris be granted reasonable visitation pursuant to a defined schedule of visitation.
....
WHEREFORE, [Caleb] prays that this court determine that a material change of circumstances has occurred, that [Caleb] is the appropriate person to have primary physical custody of the Parties' minor child, that an appropriate visitation schedule be established for Karley Rivers and Alicia Morris, that Karley *891 Rivers be ordered to pay appropriate child support, and for all other just relief and proper relief to which he is entitled.
Rivers's response admitted paragraphs 1 and 2 of DeBoer's petition but denied paragraph 9. And her counterpetition stated in paragraph 2 that "[DeBoer], in his Petition for Change of Custody has stated no grounds or any facts or allegations that would indicate a material change in circumstances has occurred." DeBoer then asked the circuit court to judicially notice a pending guardianship case in which relatives were seeking guardianship over a child Rivers has with a different man because both she and the father were allegedly in the throes of drug addiction. The point is that DeBoer plainly wanted the information in the guardianship case to serve as additional grounds to support the material-change allegations in his 2016 custody case.
Although DeBoer changed his tune on the need to plead and prove a material change in circumstances for the first time in his appellee's brief-an ill-advised and usually ineffective tack-we must still address whether he had to do so given the dissent's view of the law. How an appellate court reasons to a result can be as important as the result itself; especially in this case, which involves a sensitive and common subject matter.
Arkansas Code Annotated Section 9-10-113 and Norwood . Simply put, we read differently from the dissenters the cases that have interpreted section 9-10-113. Among them is the inaugural Arkansas Supreme Court decision, Norwood v. Robinson , 315 Ark. 255, 866 S.W.2d 398 (1993). There our supreme court stated that "[t]he order establishing paternity gave the statutory presumption the effect of a judicial determination." Id. at 259, 866 S.W.2d at 401. Norwood 's core principle applies here: the order establishing DeBoer's paternity gave the statutory presumption that Rivers had custody over G.D. since he was born the effect of a judicial determination of custody. To hold otherwise is to strike through paragraph 13 and misapply Norwood .
Three excerpts from Norwood place the dissent's position into legal perspective. The first one, with our emphasis, is as follows:
Before 1987, no presumption of custody was placed in section 9-10-113 ; either parent of an [out-of-wedlock] child could petition for custody under the same three criteria. In 1987, the legislature changed this statute by adding a presumption of custody in the mother and leaving the father with the right to seek custody after establishing paternity. In the instant case and pursuant to the statute, custody was established and remained in the mother from the child's birth in April 1988.
315 Ark. at 256-57, 866 S.W.2d at 399. The supreme court declared that custody over the child was established[1] in the mother, when the child was born, and remained with her (absent a court order to the contrary or the child reaching majority age). Likewise, when the court in this case entered its judgment pursuant to a settled statutory authority, custody over G.D. "was established and remained in" Rivers from the time G.D. was born until he reached eighteen or a subsequent court order altered the status quo.
*892 In Norwood the supreme court recited the three criteria in section 9-10-113 and addressed the change-of-circumstances angle:
Along with the above requirements, the chancellor charged [the father] with showing a change of circumstances since the last custody order, which the chancellor deemed the initial determination of paternity. The chancellor added this to the three requirements listed in section 9-10-113(c) since a "material change of circumstances" is required in other change of custody cases pursuant to divorce. The chancellor based this requirement on Ark. Code Ann. § 9-10-109(a)(1) (1987)[.]
Id. at 257, 866 S.W.2d at 400 (citation omitted).
So up to this point, our supreme court has established that custody of an out-of-wedlock child presumptively vests in the mother when her child is born and remains there. It then turned to answer whether the father of the out-of-wedlock child had to establish a material change in circumstances after a paternity order had been entered. The court answered the father's contention that "it was error to require a showing of a material change in circumstances in addition to the three criteria" in section 9-10-113(c) by holding that the paternity order acted as a judicial determination of custody. Therefore, absent a change in circumstances since the paternity order was entered, the father could not successfully contest the mother's custodial status.
...
Fathers of [out-of-wedlock] children should certainly bear the same burden as fathers of children born of marriage. The order establishing paternity gave the statutory presumption the effect of a judicial determination. Implicit in the order of paternity establishing visitation was a determination that custody should continue to rest in the mother. Unless there was a change in the circumstances since the order, the child should not be uprooted from her life-long custodial relationship with her mother. We find these statutory sections to be congruous. The finding of paternity and the establishment of visitation therein is a final determination from which to use the same standards as other custody situations.
Id. at 259, 866 S.W.2d at 401.
This case falls within Norwood 's pull because paragraph 13 is an enforceable judicial determination that placed custody of G.D. with Rivers. Our colleagues would not apply Norwood because the judgment in this case was silent on DeBoer's visitation rights, and the paternity order in Norwood mentioned that the father would receive some visitation. Whether or not a paternity order includes a visitation term for the father should not be an all-or-nothing point. The primary question is whether an order clearly enough decides custodial rights. The 2011 judgment stated that Rivers would have custody over G.D. until he turns eighteen or until a court order places custody over G.D. in someone else. And because the judgment was the first judicial declaration of DeBoer's and Rivers's custodial status with respect to G.D., it was an initial custody determination.
When the dissent's view of Norwood is generalized, a paternity order cannot operate as an initial custody determination, as a matter of law, if it is silent on a father's visitation-regardless of the order's other terms and no matter the course of events before and after the order's entry.
The better approach is to take each case on its own and see where the facts lead. Here, the record establishes that DeBoer was properly served with legal process when the OCSE commenced the paternity *893 case in 2011. He chose not to defend the suit or seek relief. He did not appear and ask for custody. He did not ask for reasonable visitation. He did not ask that his child-support obligation be lowered, et cetera. Not having appeared before the circuit court for any reason, why would the court have set visitation for a father who had expressed no interest in receiving it? How could the court have responsibly inquired whether DeBoer was fit to receive visitation (and on what terms) when the judgment was entered? All things considered, the lack of a visitation reference in the 2011 judgment does not mean that it cannot be an initial custody determination.
Temporary or Final? If the judgment operated as a custody decision in Rivers's favor, as we hold it did, then a related issue arises: was the court's decision a temporary or final adjudication of the parents' custodial rights at that time? Temporary custody orders do not trigger the material-change requirement in a subsequent custody proceeding; final ones do. So DeBoer would not have had to establish a material change during the 2016 custody case unless the 2011 judgment operated as a final custody adjudication.
Let us examine closer the court's judgment in this case, as we promised to do. It set DeBoer's future and retroactive child-support amounts to the penny, required him to provide proof of income for the prior calendar year to OCSE, imposed an ongoing duty to report future income to "the custodial parent," provided that his support obligation would "terminate as provided for by Ark. Code Ann. § 9-14-237," ordered him to procure and pay for medical insurance when it was reasonably available through his employer, and required him to pay a few fees (including an attorney's fee). The judgment did not state that a future hearing, on any issue, would be forthcoming. It did not expressly reserve any issue for future determination. Had the parties considered the 2011 judgment to be a temporary adjudication, then we may safely conclude that DeBoer or Rivers would have pursued a hearing of some scope within a reasonable amount of time after the judgment was entered. Had the court viewed its own judgment as a temporary adjudication, then it could have communicated its intent to make final any important matter that was hanging fire. But nothing further happened for almost six years. When placed in its real-world context, the paternity judgment operates much more like a final custody determination than a temporary one.
The case law wholly supports this approach and conclusion. A decade ago, in Hicks v. Cook , this court restated the legal importance of differentiating between an initial determination of custody and a change of custody.
In Harmon v. Wells ... this court analyzed two cases that relied upon Arkansas Code Annotated section 9-10-113, and held that in order to determine which standard the trial court should use in a custody dispute involving parties who were not married at the time the child was born-best interests of the child (as is utilized for initial custody determinations) or material change of circumstances (which is used when custody is being changed)-the issue rests entirely on whether the initial order in the paternity action was permanent or temporary. If it was permanent, the trial court should follow Norwood v. Robinson ... and require a change of circumstances. If it was temporary, the trial court should follow Sheppard v. Speir ... and conclude that there is no need for the father to prove changed circumstances to obtain custody.
103 Ark. App. 207, 210, 288 S.W.3d 244, 246 (2008).
*894 In Harmon v. Wells , this court wrote on the issue of whether the paternity order was temporary or final and restated that the difference determines whether a father must establish a change of circumstances in a subsequent custody challenge.
Harmon concedes that the [paternity] order was titled "Temporary Order" but points out that unlike the order analyzed in Speir, this order did not set a final hearing date and ended with the words, "this Court retains jurisdiction of this case for such further orders as may be appropriate for the enforcement of this Temporary Order and for all matters relating to custody, visitation and support of the minor child." She argues that "these are not the words of a temporary order." She also notes that "ten months later, a custody hearing [was] held."
....
Contrary to Harmon's assertion otherwise, the law does not prohibit a trial court from entering a temporary order of visitation in favor of the father at the same time that he is found to be the father and reserving the issue of custody for a later time. Speir , 85 Ark. App. at 490, 157 S.W.3d at 589. Therefore, the resolution of the issue before us rests entirely on whether the visitation order was permanent or temporary. If it was permanent, the trial court should have followed Norwood and required a change of circumstances. If it was temporary, the trial court should have followed Speir and should have concluded that there was no need for the father to prove changed circumstances. Although the order did not set a future date for a custody hearing, we conclude that the order was temporary in nature because it did not resolve the issue of custody. As such, the trial court was correct in not requiring a showing of changed circumstances.
98 Ark. App. 355, 359, 255 S.W.3d 501, 503-04 (2007).
The takeaway from Harmon is that this court analyzed the paternity order itself, and other circumstances, then concluded that the order contained a temporary, not final, custodial decision. It helped that the order was titled "Temporary Order," a designation that was used elsewhere in the order; also, a custody hearing was held ten months after the initial custodial decision had been entered. With some indicia in the order itself and the subsequent hearing in view, this court determined that the paternity order was a temporary custodial determination. Given the temporary custodial decision, the father was not required to prove a material change in circumstances when seeking custody. See also Sheppard v. Speir , 85 Ark. App. 481, 490, 157 S.W.3d 583, 589 (2004) (the paternity order's custodial term was not final because the father filed his petition for custody before the paternity order was entered and the paternity order that was entered "only set temporary visitation and went on to state that the issue of custody would be determined on October 31, 2002," a date certain and only six weeks in the future).
This case is different from Harmon and Speir . Here, the circuit court's judgment does not indicate that the custodial provision in Rivers's favor was going to be revisited soon. Neither DeBoer nor Rivers argued to the circuit court that the court's 2011 judgment was temporary and therefore did not trigger the material-change requirement. And unlike the ten-month interim between the first paternity order and the subsequent custody hearing in Harmon , or the mere six-week delay in Speir , the custody hearing in this case occurred more than five years (sixty-eight months) after the paternity judgment had been entered. By way of another comparison, in Norwood the amount of time that *895 passed between the paternity order and the subsequent custody case, during which the father was required to prove a material change, was just shy of three years. Nearly six years passed in this case.
A fifth case that informs whether a temporary or final custodial determination has been made in the out-of-wedlock context is Ryan v. White , which held that a father did not have to establish a material change in a custody dispute because he had filed a petition to establish paternity and obtain joint custody before the child was born. Moreover, the paternity order stated that the mother was granted only "temporary care and custody," and three months later, a separate order was entered "setting a final hearing to determine the issues of 'Custody, Visitation and Child Support.' " 2015 Ark. App. 494, at 10-11, 471 S.W.3d 243, 249-50. For a sixth case supporting our reasoning and conclusion in this case, consult Donato v. Walker , 2010 Ark. App. 566, at 6, 377 S.W.3d 437, 441, in which this court held that a biological father was not required to show a material change because he "sought to establish paternity and obtain custody at the same time."
But DeBoer did not file a petition for paternity and custody before G.D. was born, the 2011 paternity judgment did not merely place temporary care and custody in Rivers, and no subsequent order was entered after the paternity judgment to schedule a final hearing on the critical issues of custody, visitation, and child support, as happened in Ryan . Nor is this case like Donato , because here the father did not simultaneously seek to establish paternity and get custody. Quite the opposite.
Having applied the case law-and considering the paternity judgment in light of the events that preceded and followed its entry-we conclude that a final custody determination issued in this case. See David Newbern, John Watkins & D.P. Marshall Jr., 2 Arkansas Civil Practice & Procedure § 31:1 (5th ed. 2011) ("As a general rule, an ambiguous judgment is to be construed as is any other instrument to determine the court's intention, based on the language of the judgment, the pleadings, and the record.") (footnote omitted). If the default judgment was not intended to be a final custody adjudication, then the parties' subsequent conduct and the passage of nearly six years practically made it so. Consequently, DeBoer was required to plead and establish a material change of circumstances in this custody case before the circuit court moved to the statutory elements.
B.
Caleb DeBoer pleaded in circuit court that a material change had occurred. But did he also establish that the required change had occurred? That decision ultimately rested with the circuit court, and there is some doubt about whether the court applied the required analysis.
The 12 October 2017 order on appeal does not state that a material change in circumstances had occurred, though it clearly recited that all the elements in section 9-10-113 had been met. The court may well have concluded that a material change had occurred given the pleadings, the proof received during the hearings, and the lack of open argument between the parties over whether DeBoer had to plead and prove a material change during his case. But it is also possible that the court did not do so given the absence of an express statement on the point. In the end, a choice must be made; and we choose to reverse the October 12 order and remand the case. On remand the court is directed to make an express finding-on the record the parties filed with this court-whether DeBoer sufficiently established that a material *896 change in circumstances had occurred between the August 2011 judgment and the day he filed his custody petition in July 2016.
Reversed and remanded.
Gruber, C.J., and Glover, Whiteaker, and Hixson, JJ., agree.
Abramson, Klappenbach, Murphy, and Brown, JJ., dissent.

The first three entries in the Oxford English Dictionary for the word "establish," when used as a verb, are these: "1. To render stable or firm. 2. To fix, settle, institute or ordain permanently, by enactment or agreement. 3. To set up on a secure or permanent basis[.]" Oxford University Press, December 2018, www.oed.com/view/Entry/64530. Accessed 15 February 2019.