Cite as 2021 Ark. App. 183

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-449

| | | |
|---|---|---|
| JESSICA DONHAM | | **Opinion Delivered:** April 21, 2021 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04DR-19-553] |
| V. | | |
| JAKE FRAUENTHAL | | HONORABLE DOUG SCHRANTZ, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## MIKE MURPHY, Judge

On April 3, 2019, the appellant, Jessica Donham, filed a complaint against the appellee, Jake Frauenthal, to establish the paternity of her son, CDF, born in January 2019. In that complaint she alleged that Jake is the father, she is the proper person to have custody, and that Jake should receive visitation and pay child support. Jake answered, admitted paternity, and affirmatively pleaded that the court should award the parents joint custody. On June 3, the circuit court entered a temporary order finding that Jake is the biological father and set out a visitation schedule. A review hearing was set, but at the outset of the hearing, the court and the parties established that it was actually a final hearing. Jessica's counsel provided that Jessica was asking that she be awarded primary custody of CDF subject to standard visitation by Jake. Jake's counsel responded that their position was that joint custody was appropriate.

Jessica testified first. She stated that she was a recruiter and in online school full time, that Jake is an active parent who paid her monthly child support, and that they have coparented well together. She agreed that Jake is eager to help take care of CDF, change diapers, come over when CDF is sick, and overall be an active parent to CDF. She stated he supported her decision to breastfeed. She reiterated that they communicate and coparent well, but that her schedule allows her to stay home with CDF, and she believes that she should have primary custody.

Next, Jake testified. He spoke about his employment and his take-home pay. He said he thinks Jessica is a very good mother. He said that Jessica was not letting him see CDF as much as he would like, and he wants joint custody of CDF. He testified that they communicate well and even did some things together like take CDF to the zoo and the fair. Both parents conceded that they do argue sometimes but overall are capable of working things out.

The court then heard testimony from a few family members of both parties; everyone testified that both parties are good parents, no one spoke ill of either parent, and Jake's family reiterated that he wants more time with his son than Jessica is letting him have. The court heard closing arguments. Counsel for Jessica stated:

> On the joint custody, I still don't understand the statute of the preference. I don't know what that means. I don't know what we are. But based upon the facts here, we have a traditional custody/noncustodial arrangement. I don't see any different based upon the previous orders of the Court. Even from the defendant's admissions, I believe that he believes that's the same and that these people get along great. I don't anticipate there to be any problems moving forward. We would just ask that she be awarded primary custodial parent subject to the Court's standard visitation schedule to be gradually implemented as the Court sees fit, child support be set commensurate with his earnings, and I think we need to fix this insurance matter. I think they're

maybe paying too much and they could probably do something a little different in that regard.

Jake's counsel made closing argument, and then from the bench, the court ruled that the parents will have joint custody. It was impressed by how involved both parents wanted to be and noted that no one had anything ill to say about the other. It remarked that CDF has a lot of supportive grandparents and family members and that the parents demonstrated they are capable of working together. It found that it would be in CDF's best interest to award joint custody. The final order reflected this. The order further states that "both parents are good parents and both want to be actively involved in the life of the minor child," that the parties have cooperated and communicated since the minor child was born, and that joint custody is preferred in Arkansas and the parties shall have joint custody.

Jessica then filed a motion to amend the final order or, in the alternative, a motion for a new trial. She argued that because Jake didn't file a petition for custody, the court was procedurally barred from awarding him joint custody. She further argued that Jake did not satisfy an element of the requirements for awarding a father custody through a paternity proceeding. She asked that the final order be amended or vacated. Jake responded.

The motion was deemed denied, and Jessica correctly and timely appealed from both the final order and the deemed denial of her posttrial motion. On appeal, Jessica argues that the circuit court clearly erred when it granted joint custody because Jake (1) never filed a petition for custody; (2) did not prove that a material change in circumstances occurred; and (3) did not satisfy an element of Arkansas Code Annotated section 9-10-113(c) (Repl. 2020) to warrant a custody award.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the child; all other considerations are secondary. *Wymer v. Hutto*, 2014 Ark. App. 497, 442 S.W.3d 912. In reviewing child-custody cases, we consider the evidence de novo but will not reverse a circuit court's findings unless they are clearly erroneous. *Id*. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Id*. This deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to use to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. *Id*.

Jessica first argues that the circuit court clearly erred when it awarded joint custody because Jake never petitioned the court for custody. This argument was not made to the circuit court until Jessica's posttrial motion, and it is therefore not preserved for our review. It is well settled that our appellate courts will not consider an argument made for the first time in a posttrial motion. *Quattlebaum v. McCarver*, 2013 Ark. App. 376, 5. An issue must be presented to the circuit court at the earliest opportunity in order to preserve it for appeal. *Plymate v. Martinelli*, 2013 Ark. 194 (refusing to address an argument concerning the constitutionality of a statute where it was not raised until the motion for new trial or for reconsideration). Here, the issue of custody was squarely before the circuit court at the final hearing. Jake asserted in his answer that both parents are fit and that joint custody is appropriate. At the final hearing, Jessica's counsel requested that the circuit court grant her sole custody subject to Jake's visitation. Both parties presented evidence relating to custody, and in Jake's counsel's opening *and* closing remarks, he asserted that he was seeking joint

4

custody and that the court should award joint custody. Never once did Jessica's counsel assert that Jake was procedurally barred from receiving an award of joint custody at the time of the final hearing.

Jessica next argues that Jake did not prove a material change in circumstances sufficient to warrant a change in custody. Citing *Rivers v. Deboer*, 2019 Ark. App. 132, 572 S.W.3d 887, she contends that the acknowledgement of paternity operated as "prior paternity order" thus requiring Jake to prove a material change in circumstances to change custody from her solely to both of them jointly. This point hinges on paragraph 3 in the temporary order, where the court found:

> 3.      That paternity has previously been acknowledged at the time of birth and the Petitioner's name is already on the minor child's birth certificate.

However, the very next paragraph in that order goes on to read:

> 4.      That Jake Frauenthal, the Defendant herein, is the biological father of [CDF], born on the 30th day of January, 2019, in Benton County, Arkansas, and paternity is hereby established. That pursuant to this Order, the relationship of father and son is hereby established between the Defendant, Jake Frauenthal and the minor child, [CDF].

Jessica contends that the existence of an acknowledgement operates as a prior finding of paternity. The relevant statue reads:

> Subsequent to the execution of an acknowledgment of paternity by the father and mother of a child pursuant to § 20-18-408 or § 20-18-409, or a similar acknowledgment executed during the child's minority, or subsequent to a finding by the court that the putative father in a paternity action is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the circuit court as if it were a case involving a child born of a marriage in awarding custody, visitation, setting amounts of support, costs, and attorney's fees, and directing payments through the clerk of the court, or through the Arkansas Child Support Clearinghouse if the case was brought pursuant to Title IV-D of the Social Security Act 42 U.S.C. § 651 et seq.

5

Ark. Code Ann. § 9-10-109(a)(1)(A) (Repl. 2020).

Jessica's argument is misplaced for two reasons. First, "acknowledgement" as it is used in the statute is a term of art for an affidavit executed for a specific purpose. There is no such affidavit in this record. And second, paragraph 4 of the temporary order explicitly states that Jake is the biological father and establishes paternity. Reading the paragraphs together, it is more likely the court was using "acknowledge" in its regular sense—not as a term of art—and that paternity was not officially established until that order. Regardless, however, Arkansas Code Annotated section 9-10-109(a)(1)(A) specifically directs a circuit court to "follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the circuit court as if it were a case involving a child born of a marriage in awarding custody" subsequent to a finding of paternity *or* acknowledgement.

Jessica argues that the temporary order vested custody with her by virtue of granting Jake only visitation rights. She explains that it stands to reason, then, that the temporary order operated as an initial determination. We are not persuaded. The order is titled "Temporary Agreed Order," and it states in the second paragraph that "there is currently pending before this Court a Petition to Establish Paternity and Custody." It then makes a paternity finding, sets out a visitation schedule, and sets the matter for a review hearing. As we wrote in *Harmon v. Wells*, 98 Ark. App. 355, 359, 255 S.W.3d 502, 504 (2007),

> Contrary to Harmon's assertion otherwise, the law does not prohibit a trial court from entering a temporary order of visitation in favor of the father at the same time that he is found to be the father and reserving the issue of custody for a later time. [*Shepard v. Speir*, 85 Ark. App. 481, 490, 157 S.W.3d 583, 589 (2004)]. Therefore, the resolution of the issue before us rests entirely on whether the visitation

6

order was permanent or temporary. If it was permanent, the trial court should have followed [*Norwood v. Robinson*, 315 Ark. 255, 866 S.W.2d 398 (1993)], and required a change of circumstances. If it was temporary, the trial court should have followed *Speir* and should have concluded that there was no need for the father to prove changed circumstances. Although the order did not set a future date for a custody hearing, we conclude that the order was temporary in nature because it did not resolve the issue of custody. As such, the trial court was correct in not requiring a showing of changed circumstances.

We have even more to work with than the *Harmon* court. We hold that the final order entered in this case operated as the initial custody determination subsequent to a paternity determination. Accordingly, Jake was not required to establish a material change in circumstances in this case.

That being said, we agree with the appellant that Jake *was* required to show that he satisfied the requirements set forth in Arkansas Code Annotated section 9-10-113 (Repl. 2020). That statute provides that a court may award custody to a biological father upon a showing that (1) he is a fit parent to raise the child; (2) he has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and (3) it is in the best interest of the child to award custody to him. Ark. Code Ann. § 9-10-113.

Jessica argues that there was no evidence that he met the second element—that he had provided care, supervision, protection, and financial support. We disagree. This record is more than sufficient to establish that Jake was doing everything he could to be actively involved in CDF's life. He was present at the birth; helped Jessica with expenses while she was pregnant; exercised as much visitation as Jessica would allow and consistently asked for more; and while CDF was with him, he would care for CDF as a parent should: feeding, changing, playing, and comforting CDF. There was testimony that from the time CDF was

born, Jake paid $400 a month to Jessica without an order requiring him to, and he offered to help buy things like diapers and food. This is sufficient to meet the statute's requirements. It was not clear error for the circuit court to award Jake and Jessica joint custody.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*, for appellant.

*Miller, Butler, Schneider, Pawlik & Rozzell, PLLC*, by: *SaVannah J. Reading*, for appellee.